St. Louis Union Trust Company, Trustee of the Residuary Trust Estate Created by the Will of Julia Ann Adele Sarpy Morrison, Deceased, Plaintiff-Appellant, v. Martha Adele Morrison Kelley et al., Defendants-Respondents; Florence Kelley Reyburn et al., Defendants-Appellants.—No. 39783.—199 S. W. (2d) 344.

Division Two, January 13, 1947.

Motion for Rehearing or to Transfer to Banc Overruled, February 10, 1947.

*Shepley, Kroeger, Fisse & Ingamells* and *Harry W. Kroeger* for plaintiff-appellant St. Louis Union Trust Comany, Trustee of the Residuary Trust Estate Created by Will of Julia Ann Adele Sarpy Morrison; *William G. Pettus, Jr.,* for defendants-appellants Florence Kelley Reyburn, A. Tevis Reyburn, Kathleen MacKenzie Reyburn, Don Morrison Kelley, Adele Kelley Thompson and W. Roosevelt Thompson; *Fred Armstrong,* Guardian Ad Litem for defendants-appellants Adele Morrison Reyburn, Margot D. Kelley, Don Morrison Kelley, Jr., Anita Carr, Virginia Carr, Clark M. Carr, Jr., Eugene M. Carr, Jr., Theodore Van Soelen, Jr., and Virginia Van Soelen, Daniel Donaldson Van Soelen, Theodore Van Soelen, Jr., and Eugene M. Carr, Jr.,

*John C. Vogel* for defendants-respondents Clark M. Carr, Anita O. Carr, Eugene M. Carr, Anne A. Carr, Virginia Carr Van Soelen and Theodore Van Soelen.

928

ELLISON, J.—The appellant St. Louis Union Trust Company, testamentary trustee of the residuary trust estate created by the will of Julia Ann Adele Sarpy Morrison, deceased, brought this suit in the circuit court of the City of St. Louis: to construe her will, particularly with reference to whether a trust created by Section Six thereof in favor of her lineal descendants is void, because violative of the rule against perpetuities; to require the defendants to answer setting up their respective claims under the trust; for directions; and for general relief. The chancellor decreed the aforesaid trust provisions were void for the reasons stated, except as to one granddaughter, and the trustee and sixteen of the twenty-four defendants appealed.

The will was executed March 22, 1921. The testatrix added four codicils thereto, dated respectively December 5, 1921, December 20, 1922, June 3, 1924 and November 25, 1924. She died February 18, 1925, owning certain personal property and several ▮▮▮ valuable parcels of real estate in St. Louis, the title to which is involved in this suit. She left surviving two daughters, Martha Adele Morrison Kelley (hereinafter called Martha Kelley) and Virginia Abernathy Morrison Carr (hereinafter called Virginia Carr). The testatrix left no other children or descendants of deceased children. At the time of her death both her daughters were well along in years. Martha Kelley then had three children and one grandson. Virginia Carr had four children and three grandsons. The provisions of the mooted Sec. 6 of the testatrix's will, so far as pertinent, were as follows (paragraphing and italics ours):

(a) "Section Six: All the rest, residue and remainder of my property, whether real, personal or mixed, wherever situated, I give, de-

vise and bequeath to the St. Louis Union Trust Company of St. Louis, located in the City of St. Louis, Missouri, and to its successor or successors . . . as Trustees, in trust, however, for the following purposes, that is to say: [then follow provisions declaring the powers and duties of the trustees]; and to pay, except as hereinafter specially provided, the net rents, profits and income of every kind arising therefrom, as and when the same shall be received, monthly if practicable, as follows: The one-half thereof to my daughter Martha Kelley during her natural life, and the other half thereof to my daughter Virginia Carr during her natural life.

(b) ''And I hereby specially direct and declare that this devise and bequest in trust to my said two daughters is for their personal, sole, exclusive and separate use, free from and discharged from any and all marital rights, claims and demands of any and all kinds, whether of curtesy or otherwise, of their husbands, now living or of any after taken husbands.

(c) ''Upon the decease of either of my daughters leaving children *or descendants of children* living at such time, the said Trustees shall *convey and transfer the fee simple title and absolute property* in and of such share of my property as they may then be holding in trust for the benefit of such daughter during her lifetime, *except as in this will otherwise provided,* to such children or *descendants of children,* share and share alike, the descendants of any deceased child, however, taking the share only that their parent would have taken if living,

(d) ''and provided, however, that *he or she shall have then attained the age of thirty years,* otherwise such share shall be *conveyed and transferred* to such *child* in two equal instalments, the first of which shall be *conveyed and transferred* at the time of his or her *mother's* death, if such *child* shall have *reached the age of twenty five years,* and if he or she shall not then have reached such age, such first instalment shall be *conveyed and transferred* to him or her at the *age of twenty five years,* and the second instalment shall be *conveyed and transferred* to him or her when he or she shall have reached the *age of thirty years,*

(e) ''and the *fee simple and absolute ownership* shall *vest* in such grandchild *only at the times and to the extent next hereinabove prescribed* for the conveyance and transfer to him or her of such title, *and nothing in this will contained shall be construed to vest in such grandchild* either of said instalments *unless* he or she reaches the said *ages of twenty five and thirty years,* respectively, *except* that the net income of the share of my estate so intended for such grandchild shall, while said grandchild is living, be paid to or for it at convenient periods by my said Trustees.

(f) ''At the decease of either of my *grandchildren* before reaching the ages, respectively, entitling such grandchild *absolutely* to the part or parts of the corpus of my estate under the foregoing devise or

bequest, the said part or share of my estate shall *then* go to and be by my said Trustees *conveyed and transferred* to the person or persons who, upon the *maternal* side, to the total exclusion of heirs upon the paternal side, under the Statutes of the State of Missouri, would inherit the said share or interest as heirs or distributees of such child, had such share vested in said child.

(g), ''Provide, further, that should either of my daughters die leaving no *children or descendants* of children living at the date of her death, the share of my estate held ▮▮▮ by my said Trustees for her benefit during her lifetime shall be held by them *upon the same trusts*, and *subject to the same limitations and restrictions*, for the benefit of my surviving daughter during her lifetime, *with remainder in fee* to the *children and descendants* of children of such *surviving daughter* living at the time of her death, *subject to the same limitations and restrictions and conditions* as to the *vesting* of the *fee simple* and the *absolute* ownership therein in such children and descendants of children of such surviving daughter, *as have been hereinbefore created and declared.*''

(h) ''Provided, further, that should both of my daughters die leaving *neither children nor descendants of children* living at the date of the death of the survivor of said daughters, the whole of the estate hereby devised and bequeathed to my Trustees shall be, upon the death of the survivor of my two daughters, disposed of as follows:''—then follow directions that the trustees shall convey one-half of the trust estate to designated religious and charitable institutions; and making the remaining one-half subject to disposition by the last will of the surviving daughter, but in default of such disposition, directing the trustees to convey that share to the husbands of the two daughters, Martha Kelley and Virginia Carr.

Sec. 10 of the will authorized the trustee ''for the proper execution of the trust'' to *sell* any or all of the trust real estate or personalty *upon the same trust*, provided that the written assent of the two daughters, or the survivor of them, to such sale should be obtained, to be evidenced by their or her joining in the deed. The provision went on to say that trustees could make such sales after the death of both daughters without the previous consent of the other beneficiaries of the trust estate. This section is involved only as it may bear on the construction of the will. Sec. 7 of the will contained a spendthrift clause applying to testatrix's two daughters, Martha Kelley and Virginia Carr but not to their children or descendants. Sec. 8 contained an in terrorem clause disinheriting the two daughters and revoking the testamentary provisions in their favor if they made any attempt to contest the will or in any manner dispute its validity. All these sections are involved only as they may throw light on the construction of the will.

The only codicil that is relied on as bearing on the issues here is the second codicil, executed on December 20, 1922, about 21 months after the date of the original will. This codicil deals specially with Adele M. Carr, one of the testatrix's granddaughters, all of whom were included as contingent beneficiaries in Sec. 6 of the will, but not by name. It reads as follows (italics ours):

"It is now also my will that in the distribution of the rest and residue of my estate as provided in Section Six of my said Will, my granddaughter, Adele M. Carr, to whom by the provisions of said *Section Six* of my said Will *I have given an absolute share in remainder upon the death of her mother,* shall not take an *absolute* estate in such portion of my estate as would have been distributed to her under the provisions of said Section Six of my said Will, and I now direct that the Trustees named in said Section Six of my said Will *shall retain in their hands and control* the portion of my said estate which under the provisions of said Section Six *I have heretofore directed should be conveyed and assigned in fee simple to my said granddaughter, Adele M. Carr,* and shall continue *to administer the same under the same terms* and with the same powers and duties as they have been directed to do under the provisions of my said will with reference to all of the residue of my estate, *until the death* of my said granddaughter, Adele M. Carr, and *so long as she shall be living* shall pay to her from time to time *the net income* from said portion of my said estate, and upon her death said Trustees shall convey and assign said portion of the residue of my estate in equal parts, share and share alike, to the heirs of my said granddaughter, Adele M. Carr, who may at the time of her death be then living."

The estate of the testatrix was duly administered in the probate court of St. Louis and final settlement made in July, 1926. Thereafter the appellant trustee (and a co-trustee, Mr. Zeibig, who died in 1936) took ▮ over the administration of the trust estate. They paid the income from the trust estate to the testatrix's two daughters, Martha Kelley and Virginia Carr, one-half to each, as required by Sec. 6(a) of the will, supra; and upon the death of Virginia Carr on September 20, 1942, they distributed that share to or for her four children, under Sec. 6(d) of the will, supra. Further, in reliance on Sec. 10 of the will, they sold various parcels of the trust real estate to divers persons: one for $40,375 in 1926; one for $11,000 in 1940; one for $100 in 1941; and numerous lots in East St. Louis over a period of years at prices not shown. All these sales were made without challenge in reliance on the will, but in January, 1944, issuance of a policy of title insurance was refused on another real estate sale because the title was questioned, which precipitated the bringing of this suit.

At the time of the testatrix's death on February 18, 1925, the three children of her daughter Martha Kelley were aged, respectively, 42, 36 and 21 years. Her grandson was 16 years old. When the suit

below was brought twenty years later on February 16, 1945, Martha Kelley was 83 years old, and her descendants numbered seven, a great granddaughter, a grandson and a granddaughter having been born, respectively 10, 6 and 5 years after the testatrix's death, and being respectively 10, 14 and 15 years old. Martha Kelley, her seven descendants and the spouses of two of them, were joined as defendants, making ten in that branch of the family.

Likewise at the time of the death of the testatrix the four children of her daughter Virginia Carr were aged, respectively, 33, 30, 26 and 19 years. Her then three grandsons were, respectively, 2 years, 8 months and 2 months old. When the suit was brought twenty years later in 1945 Virginia Carr had been dead about three years, and her descendants numbered eleven, one grandson and three granddaughters having been born, respectively 16, 12, 10 and 2 years after the testatrix's death, and being 4, 8, 10 and 18 years old. These eleven descendants and the spouses of three of them were joined as defendants, making fourteen in that branch of the family.

Sixteen of these 24 descendants appealed and eight did not, according as their interests suggested. Those who did not were the testatrix's living daughter Martha Kelley and the four children of Virginia Carr, deceased, and the spouses of three of them. All of these children were over 30 years old and first in the line of descent in their branch of the family. The inheritance would go to them if the trust failed. The sixteen who did appeal and seek to uphold the testamentary trust, were all of Martha Kelley's seven descendants and the spouses of two of them, and all of the eleven descendants of Virginia Carr, deceased, except her four children. Nine of them were minors represented by guardian ad litem. As stated in the beginning, the trustee also appealed.

The chancellor's decree on the main issue was as follows (parentheses ours): "Under Section Six of (testatrix's) will, hereinabove set forth, the gifts in remainder to (testatrix's) grandchildren, or their descendants, are contingent upon the respective donees attaining the ages specified and at the time of (testatrix's) death it was not certain that all or any of these remainders would vest within a life or lives then in being and twenty-one years thereafter. Section Six of the will of (testatrix) violates the rule against perpetuities and is void."

Following the foregoing the decree contained provisions vesting in Martha Kelley and three of the four Carr grandchildren as lineal descendants their fractional parts of the trust realty and personalty. However, as regards the fourth Carr grandchild, Adele M. Carr, the decree ruled that the second codicil of the will took the provision made for her in Sec. 6 out of the rule against perpetuities; and that the codicil was valid. It will be recalled that codicil modified the provisions made in Sec. 6 of the will as to her, and directed that the

trustees should retain for her lifetime any portion. of the trust estate due her and pay her the net income therefrom; and at her death should convey· the remainder of that share to her then surviving heirs.

The brief of the appellant trustee makes twelve assignments of error. The last three of these have been abandoned. The others, ▮ reduced to and expressed in appellants' ultimate contentions, are as follows. They assert Sec. 6 of the testatrix's will divided the residuary trust estate into two equal parts, and severally created life estates in those parts, one to each of her two daughters, Martha Kelley and Virginia Carr, with remainders *in fee vesting*·severally in the *children* of the respective daughters as members of a class at the death of the testatrix. Of course if this is true, the rule against perpetuities does not apply. Appellants further contend the other provisions of Sec. 6 in favor of the *descendants* of those children, conditioned upon their attaining the ages of 25 and 30 years, were attempted executory devises on conditions subsequent, and were void—whether because violative of the rule against perpetuities, or because of ambiguity or indefiniteness, makes no difference. But they were void for the latter reasons alone. They make a few other contentions which we shall consider later.

▮ Before discussing the facts we should refer to some of the rules of construction and of law under which the cause must be determined. The paramount rule of will construction, to which all others must yield, is that the testatrix's intent governs, unless contrary to some positive rule of law. And that intention must be ascertained primarily from the will as a whole. The courts will not attempt to make a new will or an equitable distribution of the estate.[1] If the will is unambiguous and leaves no room for doubt as to the testatrix's intention, auxiliary rules of construction cannot be resorted to. But if the contrary be true, then recourse to such rules is permissible, and clauses apparently in conflict may be harmonized in the light of environmental circumstances, if consistent with the testatrix's intention as manifested by the whole will.[2]

▮ The testatrix's will speaks from the date of her death in February, 1925, and not from the date of its codicils if her intention would thereby be defeated.[3] The law favors the vesting of estates, and there is a presumption that the testatrix did not intend to die intestate as to any of her property, since she devised her entire residu-

---

[1] Sec. 568, R. S. 1939 and Mo., R. S. A.; Lang v. Taussig (Mo. Div. 1), 180 S. W. (2d) 698, 700-1(1-3); First Trust Co. v. Myers, 351 Mo. 899, 906(1), 174 S. W. (2d) 378, 380(1-3); Graves v. Graves, 349 Mo. 722, 728(1), 163 S. W. (2d) 544, 546(1); Kingston v. St. L. Union Trust Co., 348 Mo. 448, 455(1), 154 S. W. (2d) 39, 41(1).

[2] In re Bernheimer's Estate, 352 Mo. 91, 103-4(1), 176 S. W. (2d) 15, 19(1); Gannett v. Shepley, 351 Mo. 286, 289(1), 172 S. W. (2d) 857, 858(1-4).

[3] Landsdale v. Dearing, 351 Mo. 356, 363(4, 5), 173 S. W. (2d) 25, 29(12, 15), 147 A. L. R., 728.

ary estate to the trustees in the first instance. But if the provisions of her will failed to effectuate that intention, or if it discloses an intention to make a disposition of her property contrary to law, then the will is void to that extent, and she must that far be regarded as an intestate.[4]

The word "children" as used in a will, is usually given its primary meaning of legitimate offspring of the first degree, and does not include more remote descendants, unless there is something in the context of the will which manifests an intention on the part of the testator, to give it a more extensive meaning.[5]

Another rule of construction invoked by appellants is that if the testatrix's will is susceptible of two "possible" constructions, one of which would render it void under the rule against perpetuities, whereas the other would permit it to stand, the latter construction should be adopted. On that point four decisions are cited.[6] It is true that if a will is ambiguous and neither of two possible constructions *ex proprio vigore* overcomes the other, then the presumption against intended intestacy may turn the scales. But both constructions must be "possible" in the sense that "the construer is reasonably free to choose" between them; and both must be "reasonably consistent with the language and circumstances of the limitation and . . . not definitely excluded by policy or other constructional preferences." Restatement, "Property," sec. 375, pp. 2197-8, Comment; ibid., sec. 241, p. 1189, Comment b.

According to some authorities, where a will has granted a fee simple estate in one clause, that estate cannot be lessened or cut down by a subsequent clause unless the language of the latter is equally clear and unequivocal.[7] This, however, is nothing more than an application of the general rule that the intention of the testator must be ascertained from the will as a whole, for in no such case would the weaker provisions be permitted to overcome the stronger.

Another rule, more of law than construction, is that where a deed or will *vests* a fee simple title in remainder upon the termination of a preceding life estate, and within the time allowed by the rule against perpetuities, the title is good notwithstanding the instrument

[4]Riesmeyer v. St. L. Union Trust Co. (Mo. Div. 1), 180 S. W. (2d) 60, 63 (6-7); Legg v. Wagner (Mo. Div. 1), 155 S. W. (2d) 146, 148 (5); Farish v. Cook, 78 Mo. 212, 220 (3), 47 Am. Rep. 107.

[5]69 C. J., p. 171, sec. 1197; 11 C. J., p. 750; 7 Words & Phrases (Perm. Ed.), pp. 54, 63; Annotation 161 A. L. R., p. 614; Trautz v. Lemp, 329 Mo. 580, 601 (10), 46 S. W. (2d) 135, 140 (9).

[6]Carter v. Boone Co. Trust Co., 338 Mo. 629, 645 (2), 92 S. W. (2d) 647, 653 (9); Trautz v. Lemp, supra, 329 Mo. l. c. 596 (6), 46 S. W. (2d) l. c. 139 (5); Davis v. Rossi, 326 Mo. 911, 944 (12), 34 S. W. (2d) 8, 21 (13); Plummer v. Roberts, 315 Mo. 627, 628, 651, 287 S. W. 316, 323, quoting from 21 R. C. L., p. 295, sec. 19.

[7]Palmer v. French, 326 Mo. 710, 717 (1), 32 S. W. (2d) 591, 593 (1); Schee v. Boone, 295 Mo. 212, 227, 243 S. W. 882, 886 (12).

by a condition subsequent annexes a limitation whereby the fee may possibly be divested. For the rule against perpetuities is concerned with when the vested estate begins, not when it ends.[8]

The rule against perpetuities, on which the chancellor decided the case, applies to both real and personal property and to equitable as well as legal estates. It is defined as follows: "The rule against perpetuities is that no interest within its scope is good unless it must vest, if at all, not later than twenty-one years after some life or lives in being at the creation of the interest, to which period is added the period of gestation, if gestation exists." The rule is concerned with the *time* within which *title must vest*, not with a mere postponement of enjoyment or possession.[9]

Returning now to Sec. 6 of the will, and to the lettered paragraphs into which we have divided it above. Paragraphs (a) and (b) give life estates to the testatrix's two daughters, Martha Kelley and Virginia Carr. It is the remaining paragraphs (c) to (h) that govern the devolution of the trust estate upon their decease. The first and last of these—that is to say, paragraphs (c), (g) and (h)—deal with the contingencies whether either or both daughters do, or do not, leave surviving "children *or descendants* of children;" whereas in between, paragraph (d) concerns itself with the rights of a surviving *child*, and paragraphs (e) and (f) with the rights of a surviving *grandchild*. Neither of these two paragraphs expressly says anything about the *descendants* of children. It is for this reason that appellants contend the will is ambiguous, and that upon a proper construction it vests remainders in fee simple in one-half of the trust estate severally in the *children* of each daughter as a class, subject to the respective life estates of the daughters, with a void executive devise over in favor of the descendants of children.

Let us examine that contention. Turning back to paragraph (c), it definitely provides that upon the death of either of the testatrix's daughters "leaving children, or descendants of children living at such time," the trustees shall convey the fee simple title and absolute ownership in the share held for the benefit of such deceased daughter, to her surviving children or *descendants of children*. It also provides that the descendants of any deceased child shall take only the share their parent would have taken. This is too plain to be written out of the will. The paragraph then annexes a condition: it says "except as in this will otherwise provided."

---

[8]48 C. J., p. 948-9, sec. 17; 41 Am. Jur., p. 67, sec. 22; Deacon v. St. L. Union Trust Co., 271 Mo. 669, 694, 197 S. W. 261, 267(13); Schee v. Boone, supra, 295 Mo. l. c. 228(8), 243 S. W. l. c. 886(14, 15); Loud v. St. L. Union Trust Co., 298 Mo. 148, 172, 249 S. W. 629, 635.

[9]37 Words & Phrases (Perm. Ed.), p. 822; 32 ibid., p. 176; St. L. Union Trust Co. v. Bassett, 337 Mo. 604, 616(1), 620(4), 621(5), 85 S. W. (2d) 569, 574(1), 577(6, 7), 101 A. L. R. 1266.

Then follows paragraph (d), a continuation of the same sentence. It carries forward the exception stated in paragraph (c) by starting with a proviso that "he or she" [necessarily referring to all the beneficiaries in paragraph (c)] shall have attained the age of 30 years. The beneficiaries under paragraph (c) could be either children of the testatrix's daughters, or descendants of deceased children, or both. Then paragraph (d) goes on to say what shall be done if such beneficiaries have *not* reached the age of 30 years. In so doing it provides that one-half the share shall be paid to "such *child*" if at the time of "his or her" *mother's* death, the age of 25 years shall have been attained; otherwise, when "he or she" reaches that age; and the remaining half shall be paid to "him or her" when "he or she" reaches the age of 30 years.

Appellants insist this language in paragraph (d) puts a different face on the matter. They reason that it restricts the meaning of paragraph (c) because it introduces the word "child," speaks of the beneficiary as a *child,* and computes "his or her" age from the time of the death of "his or her" *"mother."* This they say must refer only to the *children* of the testatrix's two *daughters* Martha Kelley and Virginia Carr, because they were the only ones of whom it could be confidently predicted that the "child" would take through "his or her" deceased *mother.* If it referred to remoter descendants of the testatrix's daughters, both of the daughters had sons, in case of whose decease the age of their children would be computed from the death of their *father.*

There is some merit in this contention, but on the whole will we cannot sustain it. The age limitations applied to *both* the children and the remoter descendants of the testatrix's two daughters. With respect to children of the testatrix's daughters taking under the will, the language was strictly accurate. With respect to grandchildren of the daughters it might not be. But in view of all the possible eligible takers the word "mother" must have been used when the word "parent" was meant. As a matter of fact, the preceding paragraph (c) provided that the descendants of a deceased child should take the share their "parent" would have taken if living.

Continuing in the same sentence, paragraph (e) went on to say "the fee simple and absolute ownership shall *vest* in *such grandchild* only *at the time and to the extent* next hereinabove prescribed for the conveyance and transfer to *him or her* of *such* title, and *nothing in this will contained* shall be construed to vest in such *grandchild* either of said instalments unless he or she reaches"—the prescribed ages, except that *"such grandchild"* shall receive the income from the share intended for it.

This certainly was an emphatic and unambiguous declaration that fee simple title and absolute ownership in allotted parts of the trust estate should not *vest* in "such grandchild" unless he or she should

attain the ages of 25 and 30 years, respectively, as earlier required in the will. But to whom did the word "grandchild" refer? In the preceding paragraph (d) a taker was designated as "he and she" and "such child" referring back to paragraph (c) where undisputably the takers included "children or descendants of children" of daughters of the testatrix, living at the time of the death of the daughters. The children of the testatrix's daughters would be her grand children, and the descendants of such children would be at least her great grandchildren and the grandchildren of the daughters.

But without attempting to answer for the minute the question just propounded above, we proceed to the next three paragraphs (f), (g) and (h). Paragraph (f) is a new sentence beginning: "At the decease of either of *my* grandchildren before reaching the ages, respectively, entitling *such grandchild* absolutely to the parts of the corpus of my estate under the foregoing devise or bequest, the said part or share of my estate shall then go"—following that the paragraph tells how the share should devolve. We shall return to that part. Paragraphs (g) and (h) returned to the old ██ formula. The first covers a situation where either of the testatrix's daughters died leaving no living children *or descendants of children,* but the other daughter did not. Paragraph (h) applies where both daughters die leaving neither surviving children nor *descendants of children.*

So, looking at the will as a whole, we find it started and ended with the lineal descendant theory of devolution imbedded in it, but in the intervening paragraphs there was a loose use of the words "children" and "grandchildren." However, as shown by the authorities cited in marginal note 5, the word "children" does not necessarily import lineal descendants of the first degree. And the same is true of "grandchildren." 18 Words & Phrases (Perm. Ed.) p. 624. We think the will in general means that descendants of deceased children of the testatrix's daughters do take under it.

██ But returning to paragraph (f). It provides that in event of the death of "my *grandchildren*" before they reach the ages of 25 and 30 years, when they would have been entitled to their shares in the trust estate absolutely—then the trustees should convey and transfer that part of the estate "to the person or persons who, upon the *maternal* side, to the total exclusion of heirs upon the paternal side," would have inherited such share as heirs of "such *child*" under our statutes, had such share vested in "said *child.*" Here, again, it will be observed, paragraph (f) uses the word "grandchildren" in the beginning, and the words "such child" and "said child" at the end. This confirms the conclusion that the words "child" and "grandchild" were loosely used in the will, and do not override the provisions generally granting interests to *descendants* of the children of testatrix's daughters.

Nevertheless, this paragraph (f) does modify the other provisions of the will with respect to "descendants of children." Ordinarily, "descendants" means issue, or lineal descendants, though it may refer to collateral kin. 12 Words & Phrases (Perm. Ed.) pp. 220, 235. As used in paragraphs (c), (g) and (h) of the instant will it undoubtedly signifies lineal descendants. But paragraph (f) limits the meaning to such persons on the *maternal* side as would constitute heirs and inherit the share of the deceased "grandchild" under our statutes, had that "grandchild" died seized of his prospective share. Now if the "grandchild" died leaving lineal descendants, he would have no collateral heirs, either maternal or paternal, who could inherit under our statute, Sec. 306, R. S. 1939 and Mo., R. S. A. In that event his lineal descendants would come in under the other provisions of the will. But if he died leaving only collateral heirs, then only those whose blood relationship was traceable through his mother would come within paragraph (f). But this would not exclude even full brothers and sisters, etc., notwithstanding they were similarly related through a common father, for they would still be maternal heirs. This and the other questions of construction discussed in the last few paragraphs are directed not alone to that question but also to appellants' contentions that those provisions of the will are void for ambiguity.

Appellants argue that the second codicil of the testatrix's will shows it was the intention of Section 6 that the title of the beneficiaries in the trust should vest and *not* be postponed beyond the limit fixed by the rule against perpetuities. That codicil changed the provision made in Section 6 for Adele M. Carr, a daughter of Virginia Carr and one of the testatrix's granddaughters, who, along with other grandchildren, was a beneficiary under Section 6, though not specifically named therein.

The codicil recites that the testatrix desires to make a different provision for Adele M. Carr, "to whom by the provisions of said Section Six of my said Will I have given an *absolute* share in remainder upon the death of her mother." Then the codicil directs the trustees to retain the portion of the trust estate "which under the provisions of said Section Six I have heretofore directed should be conveyed and assigned in *fee simple* to my said granddaughter, Adele M. Carr;" and to pay her the income therefrom.

It is appellants' contention that these statements of the testatrix in the codicil show her intention in the original will was to give an absolute remainder interest in fee simple to Adele M. Carr *at* the time of her mother's death. But we do not think so. It is true the original will did provide that *ultimately* Adele M. Carr should receive her share of the trust estate absolutely and in fee simple. But the testatrix did not say in the codicil that she had conveyed that ultimate interest to Adele M. Carr unconditionally or that the

interest should vest at any certain time. We think the codicil does not change the meaning of the original will in any degree.

After the argument and submission of this cause, on September 10, 1946, counsel for the appellant Trust Company wrote a letter to the clerk of this court on October 28, 1946, invoking the statutes of limitations against any claims of the defendant-respondents adverse to the testatrix's will under the rule against perpetuities or otherwise, and asked that the point be considered by the court. It cited as authority Odom v. Langston (Mo., Div. 1) finally decided July 8, 1946, and later reported in 355 Mo. 109, 195 S. W. (2d) 463, 464(2) after appellants' brief had been filed.

We think the decision is not in point. It concedes that an executor or trustee under a will may bring a suit for the construction of the will without being subject to statutory limitations. The appellant trustee *is* trustee of the testatrix's will in this case, and it *is* a suit for the construction of the will. The trustee itself raises the perpetuities issue as a live question. Neither is it shown that the trustee has been in adverse possession of the trust property, but only as trustee, for better or worse, whatever the will means and whatever may be its legal effect. We think there is no merit in this point.

In our opinion the cause was well ruled by the Chancellor, and the judgment and decree rendered by him are affirmed and adopted All concur.