**Jay F. DAVIES et ux., Respondents,**

v.

**Lena McDOWELL et al., Appellants.**

**No. KCD 28315.**

Missouri Court of Appeals,
Kansas City District.

April 4, 1977.

1. Collected 46 A.L.R.3d 1024, et seq.

Roger J. Barbieri, Barbieri, Combs & Gotschall, Kansas City, for appellants.

Warren S. Earhart, Gersh, Holt, Earhart, Jones & Dibler, Grandview, for respondents.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

The parties to this action are the owners of adjoining duplex homes sharing a party wall. The respondents (plaintiffs) are husband and wife, and the appellants (defendants) are a widow and her son and daughter and each owns their respective properties in fee simple.

The plaintiffs brought this action seeking specific performance of a certain covenant in a "Party Wall Agreement" concerning the common wall separating the properties. This document was executed on August 5, 1966 by the developer of the residential area, Raytown Land Company, and was filed of record and contains perpetual covenants running with their land. Each of the parties took title to their properties subject to such covenants. The plaintiffs' claim was that the defendants violated a provision of these covenants in failing to notify the plaintiffs of a sale of defendants' property and failing to recognize plaintiffs' preemptive right to purchase such property. They asked for a decree of specific performance of the terms of the agreement and a decree vesting title to the defendants' property in them, and for money damages for rentals of which they were deprived.

The case was tried before the court below, without a jury, and the court entered a decree and judgment ordering specific performance and the transfer of defendants' property to the plaintiffs upon the payment to the defendants of $16,750.00; found that

plaintiffs had been damaged by loss of rentals in the amount of $4,495.00 and allowed such sum as an offset against the $16,750.00, leaving a net payment due to defendants of $12,255.00. Upon the payment of such sum, the defendants were ordered to execute a deed of conveyance to plaintiffs; and, in the event of their failure to do so. the defendants were divested of their title upon the payment of such sum into the registry of the court. After an unavailing motion for a new trial, the defendants appeal.

They raise two points on this appeal. *First,* that the court erred in entering judgment for the plaintiffs and in holding that the Party Wall Agreement gave the plaintiffs a preemptive right to purchase the defendants' property as such agreement was void and unenforceable in that it violates the Rule Against Perpetuities and represents an unreasonable restraint on alienation. *Second,* the court erred in awarding damages to the plaintiffs for lost rentals because such items were special damages that should have been (but were not) pleaded, communicated to the defendants, all expenses should be considered before arriving at proper damages, and that evidence of rental value alone is insufficient to support the damage award.

The Party Wall Agreement filed of record by the Raytown Land Company in August of 1966 contains the following provisions pertinent to this appeal:

"PARTY WALL AGREEMENT

WHEREAS, Raytown Land Co., a Missouri corporation, duly qualified to conduct business in the State of Missouri, is the owner in fee of the following described real estate, * * * and

WHEREAS, said owner has constructed on said premises for sale to various and sundry persons, a multiple dwelling composed of two (2) dwelling units connected by a division or party wall and said owner proposes to sell said property in two (2) lots or parcels, which parcels are as follows:

\* \* \* \* \* \*

NOW, THEREFORE, the undersigned, in order to protect *each and every purchaser, his heirs and assigns, of any such dwelling unit,* the following easements on building structures and party walls located on said premises are hereby created, to-wit:

\* \* \* \* \* \*

12. If any owner of a dwelling unit other than Raytown Land Co. shall desire to sell the same, and shall at any time, or from time to time, receive an acceptable bona fide offer from a *stranger in ownership* to purchase the same, he shall give notice thereof by registered mail addressed to the other owner at the dwelling unit owned by him, setting forth all of the terms and conditions of said offer. If, within thirty (30) days after receipt of such notice, the other owner has not, in writing, accepted and agreed to fulfill the same terms of sale as those received from such stranger in ownership, then provided he has obtained the consent required in paragraph 11,[1] the owner desiring to sell, may sell his dwelling unit to such stranger in ownership.

13. *The easements hereby created are and shall be perpetual* and shall be construed *as covenants running with the land.* \* \* \* " (Emphasis supplied)

The plaintiffs sought and were granted a decree of specific performance of the right of preemptive purchase as provided in paragraph 12.

There is no relevant dispute as to the factual background of this case. The plaintiffs acquired their property by warranty deed dated July 21, 1970, wherein the defendant, Lena McDowell, and Mary E. Malone were the grantors. Plaintiff Jay Davies testified that when this deed was delivered, a copy of the Party Wall Agreement was also given him, although Mrs. McDo-

---

1. Paragraph 11 of the agreement provides:

"No owner of a dwelling unit other than Raytown Land Co. will ever cause, suffer or permit his unit to be sold, rented to or occupied by any other person without first obtaining the consent in writing of the other owner; provided, however, that such consent shall not be arbitrarily or unreasonably withheld."

well testified that she was never aware of the existence of the agreement or of its contents until this dispute arose.

On February 13, 1973, the defendants sold their duplex to Kathleen M. Rowen, a single person, and Lawrence T. Rowen and Theresa M. Rowen, husband and wife, for $16,750.00 and delivered a warranty deed of conveyance.[2]

No consent was obtained from the plaintiffs under paragraph 11 nor notice given to them under paragraph 12 of the agreement. Mr. Davies learned of the Rowen purchase on February 18, 1973 and advised the defendants by letter of his desire to exercise his preemptive right to purchase the property under date of February 20, 1973. This was followed by a formal notice by certified mail to all concerned parties under date of March 5, 1973 of the exercise of the preemptive right to purchase under the same terms as the Rowen sale in accordance with paragraph 12 of the Party Wall Agreement. He testified that although he was at all times ready, willing and able to complete the purchase, he never received any acceptance of his offer.

Under date of May 22, 1973, he received a letter from the attorney for the defendants requesting permission to rent the Mc-Dowell-Nichols duplex to a Rich Baldwin. Plaintiffs' attorney responded on their behalf refusing such consent, reaffirming the plaintiffs' right of preemption purchase, and repeating the plaintiffs' offer to purchase.

Mrs. McDowell testified that the Rowens had deeded the property back to the defendants, such deed being dated April 27, 1973 and recorded May 18, 1973, and she had returned the entire purchase price and reimbursed the Rowens for their expenses. This transpired after the instant suit was commenced. She thereupon rented the property to Rich Baldwin for $175.00 per month. She admitted that she never offered the property to the plaintiffs, as re-

quired by paragraph 12, nor obtained their consent to the Rowen sale as required by paragraph 11. She denied any actual knowledge of the Party Wall Agreement prior to the Rowen sale. No request for consent or notice of the Rowen sale was given to the plaintiffs by the Nichols or anyone acting on their behalf.

It should be here noted that the whole thrust of plaintiffs' petition, their evidence, trial theory and request for relief centers on the preemptive right created by paragraph 12 of the Party Wall Agreement and it is that right only which they sought to enforce and which the decree of specific performance protected.

The fact that no consent to the Rowen sale was ever sought or given under paragraph 11 is only incidental to the primary issue here presented. Appellant strongly attacks paragraph 11 of the agreement (Footnote No. 1, supra) as illegal and void because it is an improper restraint upon the right of alienation, an inseparable incident to an estate in fee simple, and there is substantial merit and logic in that position. Such contentions, however, need not be and are not decided here.

The issue on this appeal, thus narrowed, is whether or not paragraph 12 of the Party Wall Agreement considered with the other terms of the agreement violates the Rule Against Perpetuities. The conclusion is reached that it does.

At the outset, it is necessary to note a common misconception concerning the Rule Against Perpetuities which misconception is embraced in respondents' brief wherein it is argued that the preemptive right of purchase does not violate the rule because there are always persons in being who can convey the entire fee estate. The cases cited in support of this position, *Stevens v. Annex Realty Co.,* 173 Mo. 511, 73 S.W. 505 (1903); *Noel v. Hill,* 158 Mo.App. 426, 138 S.W. 364 (1911); *Melvin v. Hoffman,* 290 Mo. 464, 235 S.W. 107 (banc 1921); *Pierce v.*

---

**2.** On February 14, 1973, the Rowens executed a deed of trust to Frank P. Sebree as Trustee for the Home Savings Association, which was thereafter cancelled. Sebree and the Associa-

tion were initially parties to this action but these parties offered no defense and the judgment and decree herein dismissed the action as to them.

*St. Louis Union Trust Co.,* 311 Mo. 262, 278 S.W. 398 (1925), are not in point. Examination of the decisions reveals they held either (1) that the interest vested absolutely and the Rule Against Perpetuities did not apply, or (2) spoke to the problem only in the terms of restraints upon alienation, or (3) like respondents, confused the Rule Against Perpetuities with the Rule Against Unreasonable Restraints on Alienation.

■ The Rule Against Perpetuities and the Rule Against Unreasonable Restraints on Alienation, however closely akin, are two distinct rules of property. The former is a rule against remoteness in the vesting of title while the latter deals only with existing limitations restricting alienation. Otherwise stated, "The rule against perpetuities fixes the time within which a future interest must vest, while the rule against restraints on alienation is to prevent the inalienability of present or future vested interests", *Kershner v. Hurlburt,* 277 S.W.2d 619, 623[3] (Mo.1955); *Atchison v. City of Englewood,* 170 Colo. 295, 463 P.2d 297 (banc 1970); 70 C.J.S. Perpetuities § 2, pp. 574, 575; Lynn, The Modern Rule Against Perpetuities, p. 9, Cf: *Missouri State Highway Commission v. Stone,* 311 S.W.2d 588 (Mo.App.1958); *St. Louis Union Trust Co. v. Kelley,* 355 Mo. 924, 199 S.W.2d 344 (Mo.1947); *Trautz v. Lemp,* 329 Mo. 580, 46 S.W.2d 135 (banc 1932). Concern here is directed to the Rule Against Perpetuities.

■ Broadly stated, this rule "requires that every future interest be so limited that by the terms of its limitation it must either vest or cease to exist within the period allowed. If by the terms of its limitation it might continue to exist as an unvested interest after the period allowed it is void in its creation." Fraser and Sammis, The California Rules Against Restraints on Alienation, Suspension of the Absolute Power of Alienation and Perpetuities, 4 Hasting L.J. 101, 107 (1953), Cf: Gray, Rule Against Perpetuities, Sec. 201; *Mercantile Trust Company v. Hammerstein,* 380 S.W.2d 287 (Mo.1964); *St. Louis Union Trust Co. v. Kelley,* 355 Mo. 924, 199 S.W.2d 344 (1947).

More precisely defined, the rule (applicable in Missouri) as stated in 23 V.A.M.S., Sec. 66, pp. 59–60, Eckhardt and Peterson, Possessory Estates, Future Interests and Conveyances in Missouri,

"The rule may be stated as follows: A future interest subject to a condition precedent is void if by any conceivable course of events the conditions precedent may happen and the interest vest more remotely than a period of lives in being and a period of twenty-one years thereafter, and any actual periods of gestation."

See: *St. Louis Union Trust Co. v. Kelley,* 355 Mo. 924, 199 S.W.2d 344, 350[10, 11] (1947).

■ While rights of preemptive purchase are subject to enforcement in equity for specific performance, *Gilmore v. Letcher,* 508 S.W.2d 257, 262[8] (Mo.App.1974), such rights are also subject to the restrictions of the Rule Against Perpetuities. *Kershner v. Hurlburt,* supra; American Law of Property, Vol. VI, Sec. 26.64, p. 506; Thompson on Real Property, Section 2015, p. 613.

■ This principle is thus stated in 61 Am.Jur.2d, Perpetuities and Restraints on Alienation, Sec. 54, Pre-emptive rights, p. 55:

"A pre-emptive right to purchase real estate, which right involves the creation of a privilege to buy only on the formulation of a desire by the owner to sell, as distinguished from an ordinary option giving the optionee the absolute right to buy for a definite consideration, is held to be subject to the rule against perpetuities. *Thus it has been ruled that a contractual right, granted to A and his heirs and assigns, unlimited as to time, to purchase real estate upon the same terms as the owner could and would sell to a third person, is void.* However, where a pre-emptive right option is *personal* to the parties *and is not binding upon their heirs or assigns,* it has been held not to violate the rule against perpetuities." (Emphasis supplied)

In *Kershner v. Hurlburt,* 277 S.W.2d 619 (Mo.1955), contemporaneously with the con-

veyance of one-half of a lot, the grantor and grantee entered into a separate agreement whereby they gave to each other the preemptive right to purchase the half owned by each, in the event one decided to sell, at the price which they paid for such one-half plus the cost of improvements added since acquisition. Thereafter, one of the parties sold his one-half to a third party without first offering it to the owner of the other half at the price set in the contract. The trial court refused to decree specific performance. On appeal, the respondent contended that the contract was unenforceable because it violated the Rule Against Perpetuities and constituted an unreasonable restraint on alienation. While holding that both rules were applicable to such a contract, the appellate court held that, since the contract *did not purport to bind the heirs or assigns of the parties,* the rights were *personal* to the parties and terminated at their deaths, the Rule Against Perpetuities was not violated. The court held, however, that the contract was an unreasonable restraint on alienation because of the fixed price provision above noted. The other Missouri cases cited in the briefs and disclosed by independent research are distinguishable on the facts and not helpful toward a solution of the problem here presented.

Decisions from other jurisdictions, commanding respect and persuasive here, have substantially applied the principles enunciated in the above quote from 61 Am.Jur.2d. *Atchison v. City of Englewood,* 170 Colo. 295, 463 P.2d 297 (banc 1969); *Henderson v. Bell,* 103 Kan. 422, 173 P. 1124 (1918); *Maddox v. Keeler,* 296 Ky. 440, 177 S.W.2d 568, 162 A.L.R. 578 (1944); *Skeen v. Clinchfield Coal Corporation,* 137 Va. 397, 119 S.E. 89 (1923); *Ross v. Ponemon,* 109 N.J.Super. 363, 263 A.2d 195 (1970); *H. J. Lewis Oyster Co. v. West,* 93 Conn. 518, 107 A. 138 (1919); 40 A.L.R.3d 920.

The Party Wall Agreement here under consideration purported to bind *"every purchaser, his heirs and assigns"* and, thus, could not by any stretch of reason be deemed to be a "personal" preemptive right

to purchase as between the parties to this action. Neither is this right limited as to time. Indeed, paragraph 13 expressly states, "The easements hereby created are and shall be *perpetual* ". The conclusion is inevitable that the preemptive purchase right purported to be granted in the Party Wall Agreement is void and unenforceable because violative of the Rule Against Perpetuities.

While not discussed by the parties to this appeal, the Legislature of this state has enacted a statute, Section 442.555 RSMo 1969, Laws 1965, p. 628, and that statute is applicable here. This statute provides that if a part only of an instrument is held to be void as a violation of the Rule Against Perpetuities the remaining provisions shall be valid and effective, according to their terms, and further provides for an action to reform the offending provision so as to remove the fault.

Mention is made of this because the scope of this decision should not and is not extended beyond the limited holding that paragraph 12 of the Party Wall Agreement is void and unenforceable. Because of the realization that the other parts of the agreement with the possible exception of paragraph 11 (not here directly at issue) are necessary to the continued ownership, security and enjoyment of the real property involved, they should be and are left undisturbed by this decision.

One further matter deserves comment. The respondents assert in the argument portion of their brief (apparently as an afterthought) that the defense of violation of the Rule Against Perpetuities is not available to the appellants because such defense was not specifically pleaded, is · an affirmative defense and is required to be set forth affirmatively in their answer under Rule 55.08 of the Rules of Civil Procedure. There is no merit to this contention.

The plaintiffs (respondents here) pleaded the Party Wall Agreement in their petition and incorporated such agreement by reference therein and claimed that paragraph 12 thereof gave them "the right of pre-emption to purchase". The *legality* of that

paragraph was thus put in issue. In their first amended answer the defendants (appellants here) denied such allegation and asserted that such provision deprived them of "property rights as provided under the laws of the State of Missouri."

Counsel for respondents in his opening statement to the court recognized this as a legal issue in the case under the pleadings, as thus appears in the transcript:

"MR. EARHART: The Defendants have raised the issue in their answer that the provision in the covenant that's recorded violates the rule against perpetuities, * * * "

The case was tried and submitted to the court with this legal issue very much alive and in appellants' motion for a new trial the assignment of error that paragraph 12 violated the rule was specifically raised. Neither the court nor counsel were in any way misled or surprised that this was a real issue properly submitted for adjudication. The respondents' argument on this point is without merit.

Because of the conclusions reached herein, it is unnecessary to rule upon the appellants' second point.

The judgment and decree below is reversed.

All concur.