St. Louis Union Trust Company, Trustee Under Conveyance by Indenture of Trust, Executed the 15th Day of December, 1923, by Oscar Herf, Now Deceased, Respondent, v. Fred S. Hamilton, Doris Herf, Bertha Herf, by C. Staehelin, Her Guardian, C. Otto Boelitz Herf, Hella Hessel, Sigrid Hessel, Respondents, and J. Howard McGrath, Attorney General of the United States, as Successor to the Alien Property Custodian, Appellant, No. 41735—235 S. W. (2d) 241.

Division One, January 8, 1951.

*Harold I. Baynton,* Assistant Attorney General, *Drake Watson,* United States Attorney, *George B. Searls, Joseph Laufer, Robert B. McKay* and *Ralph S. Spritzer,* Department of Justice Attorneys, for appellant.

*Jacob M. Lashly, Paul B. Rava* and *Lashly, Lashly & Miller* for respondents Fred S. Hamilton; Doris Herf; Bertha Herf, by C. Staehelin, Her Guardian; C. Otto Boelitz Herf; Hella Hessel and Sigrid Hessel.

*Orr, Pflager, Foulis & Andreas* for respondent St. Louis Union Trust Co.

[242] HOLLINGSWORTH, J.—This action was brought by St. Louis Union Trust Company for construction of a trust indenture in which it was trustee, and for directions as to distribution of the corpus and certain accumulated income of the trust estate. Two of the named beneficiaries were German nationals residing in Germany, and the Attorney General, as successor to their interests under the Trading with the Enemy Act, was included as a defendant. The amount in dispute exceeds $7500.

The trial resulted in a judgment adverse to the contentions of the Attorney General as to the extent of the accumulated income and corpus of the estate payable to him as successor in interest as aforesaid, and he has appealed. The ultimate questions for determination are the distribution of certain income set apart by the trustee to the account of Ernst Herf prior and subsequent to his death and the amount of undistributed income and corpus of the estate payable to the Attorney General by reason of the death of two German nationals, said Ernst Herf and Erna Hessel Koester, without descendants.

The trust was created on December 15, 1923, by written Indenture of Trust, wherein Oscar Herf, as donor, conveyed certain bonds and stocks of a designated par value of $461,000 to St. Louis Union Trust Company as trustee ''for the benefit of his relatives named herein''. At that time Oscar Herf (hereinafter referred to as settlor) was and so remained until his death a childless widower. His blood relatives consisted of the children and grandchildren of a brother, Carl Jacob Ernst Herf, who had died in the year 1900, to-wit:

(1) Oscar Herf, a son of Carl Jacob, had died on November 5, 1917. He was survived by his wife, Bertha, and two children, Doris Herf and Ludwig Herf. Ludwig Herf's name was afterwards changed to Fred S. Hamilton.

(2) Fritz Herf, and his two children, Ernst Herf and Gisela Herf Frei.

(3) Hella Herf Hessel, and her two children, Sigrid Hessel and Erna Hessel Koester.

(4) Maria Herf Boelitz, and her two children, Otto Boelitz and Liselotte Boelitz Kayser.

The trust indenture provided for the accumulation of the entire trust income until the death of the settlor. Thereafter, for the duration of the trust, one-fourth of the income was to be accumulated, and three-fourths to be ''distributed in equal quarterly or other convenient instalments as follows:

"(a) One-fourth [of three-fourths] thereof shall be paid over and distributed unto Bertha Herf, the widow of the Donor's deceased nephew, Oscar Herf, while she remains single and unmarried, or [243] if she does not remarry, then until the termination of this trust, or until the date of her prior death, and from and after the date of her remarriage or death during the existence of this trust, her share in the income arising from the trust estate shall be paid over and distributed unto the descendants of the Donor's deceased nephew, Oscar Herf, in equal shares per stirpes, until the termination of this trust as hereinafter provided, or if there shall be no such descendants of him then living, then such income shall be paid over and distributed unto the other beneficiaries hereinafter named in paragraph (b) hereof who may then be living, and unto the descendants of any of them who may have died prior to such time, in equal shares per stirpes, until the termination of this trust as hereinafter provided.

"(b) The remaining three-fourths [of three-fourths] of such net income shall be paid over and distributed in equal shares unto Donor's nieces, Maria Boelitz and Hella Hessel, and the Donor's nephew, Fritz Herf, until the termination of this trust as hereinafter provided, or until the date of their respective deaths, and from and after the death of any of the said beneficiaries during the existence of this trust, their respective shares in the income arising from the trust estate shall be paid over and distributed in equal shares per stirpes unto their respective descendants until the termination of this trust as hereinafter provided; or if any of the said beneficiaries of this trust shall die prior to its termination without descendants him or her surviving, then the share of such deceased beneficiary so dying without descendants him or her surviving, in the income arising from the trust estate shall be paid over and distributed unto the other beneficiaries herein named in paragraph (b) hereof, and unto the descendants of any such beneficiaries who may have died prior to such time, in equal shares per stirpes, until the termination of this trust, including, however, in such distribution, the said Bertha Herf, if then living, while single and unmarried, or if she shall then be married or dead, then including the descendants of the Donor's deceased nephew, Oscar Herf, in such distribution."

Upon termination of the trust, which, in accordance with provisions of the indenture, occurred on December 31, 1946, distribution was directed in the following language, the construction of which is here the principal issue:

"* * * the entire corpus of the trust estate and undistributed income shall be paid over and distributed unto Fritz Herf, Ernst Herf, Gisela Herf, Bertha Herf if single and unmarried, Ludwig Herf, Doris Herf, Maria Boelitz, Otto Boelitz, Liselotte Boelitz, Hella Hessel, Erna Hessel (Mrs. Koester), and Sigrid Hessel, and unto the de-

scendants of such of them as may have died prior to such time, in equal shares per stirpes, free from trust; provided, however, if the said Bertha Herf shall then be married or dead, the share which she would have received in the corpus of the trust estate and undistributed income shall be paid over and distributed unto the descendants of the Donor's deceased nephew, Oscar Herf, in equal shares per stirpes, free from trust, or if there shall be no such descendants, then unto the other beneficiaries herein named then living, and unto the descendants of any of the said beneficiaries who may have died prior to such time, in equal shares per stirpes, free from trust.

"If the said Bertha Herf shall marry or die, and all of the other beneficiaries herein named shall die, prior to the termination of this trust, without descendants of the Donor's deceased nephew, Oscar Herf, or descendants of any of the other beneficiaries herein named living upon the termination of this trust, so that there shall be a complete failure of beneficiaries hereunder, then the corpus of the trust estate and undistributed income shall be paid over and distributed in equal shares unto Barnes Hospital, of St. Louis, Missouri, and the Lutheran Hospital, at 2646 Potomac Street, St. Louis, Missouri, free from trust."

In the final section of the trust indenture settlor provided that no beneficiary of the trust should be able "to assign, pledge [244] or otherwise anticipate any income or equitable interest" under the trust, and further that the shares should not be subject to claims of creditors.

Oscar Herf, the settlor, died testate on March 1, 1928. His will, executed on July 14, 1926, was duly admitted to probate and letters testamentary were issued to St. Louis Union Trust Company as executor. The will is not in issue in this suit, but both parties refer to the provisions thereof in support of their respective contentions as to the intention of Oscar Herf with reference to the distribution of income and corpus of the trust. After certain specific bequests, the testator provided that his residuary estate, real and personal, should be paid over to the St. Louis Union Trust Company to hold in a testamentary trust, which also terminated on December 31, 1946. The provisions in the testamentary trust for distribution of income during the life of the trust and of corpus upon its termination were of a pattern generally similar to the inter vivos trust. There were variations, however, which were urged by both parties in support of their respective contentions. Such of these provisions as are considered pertinent will be discussed.

On the date of termination of the inter vivos trust, December 31, 1946, four of the named beneficiaries therein had died:

(a) Fritz Herf, on January 9, 1928, survived by his widow and his two children, Ernst Herf and Gisela Herf Frei;

(b) Ernst Herf (although surviving his father, Fritz Herf) on December 3, 1943, without surviving descendants;

(c) Erna Hessel Koester, daughter of Hella Herf Hessel, on April 18, 1930, without descendants;

(d) Maria Boelitz, on February 6, 1925, survived by her two children, Otto Boelitz and Liselotte Boelitz Kayser.

Between June, 1948, and February, 1949, the Alien Property Custodian (and the Attorney General, as his successor,) determined the following individuals or classes were German nationals and took over all their interests in and to the inter vivos trust agreement, to-wit: Liselotte Boelitz Kayser, Gisela Herf Frei, the descendants of Fritz Herf, and the domiciliary representatives, heirs-at-law, next-of-kin, legatees and distributees of Ernst Herf and Erna Hessel Koester (and others whom he contended might be successors in interest). On motion of the Attorney General, the trial court struck as parties defendant Gisela Herf Frei and Liselotte Boelitz Kayser and another possible successor in interest and substituted him as a defendant in their stead on the ground he had succeeded to their interests in the trust estate. No contention is made he does not succeed to their interests, as they may be determined.

This suit sought a determination of the court as to the proper distribution of the corpus of the estate, which would have been distributable to Ernst Herf and Erna Hessel Koester, had they survived the termination of the trust, each of which shares then amounted to $72,089.76. It was also alleged in the petition that prior to the death of Ernst Herf, on December 3, 1943, the trustee had accumulated income in the amount of $5,122.12 payable to him, but he was a national of an enemy country, Germany, which prevented transmittal to him; and that subsequent to Ernst Herf's death and until the termination of the trust the sum of $6,275.98 had been set aside in a separate account as "being due the estate of Ernst Herf, deceased".

The trial court adjudged:

(1) That the shares of corpus and accumulated income of Erna Hessel Koester and Ernst Herf which would have been distributed to them had they survived the termination of the trust should be paid over in one-eighth parts to each of the eight surviving named beneficiaries, with the exception that the shares of Gisela Herf Frei and Liselotte Boelitz Kayser, alien enemies, should be paid to the Attorney General as their successor in interest;

(2) That the sum of $5,122.12, constituting income accrued to Ernst Herf during his life and not distributed to him because of war restrictions, should be paid over to the same persons and in the same proportions as above set out;

[245] (3) That the sum of $6,275.98, being the income accrued on the Ernst Herf interest after his death, should be paid over as

follows: One-fourth to Bertha Herf, one-fourth to Hella Hessel, one-eighth to Otto Boelitz, and three-eighths to the Attorney General as successor to the interests of Gisela Herf Frei and Liselotte Boelitz Kayser, alien enemies.

On this appeal the Attorney General contends the trial court erred in three respects in its order for the distribution of the corpus and income of the inter vivos trust, to-wit:

(1) In the distribution of the shares of the named beneficiaries who died prior to the termination of the trust survived by descendants;

(2) In the distribution of the income due Ernst Herf which accrued both before and after his death; and,

(3) In holding that the named beneficiaries took contingent remainders instead of vested remainders.

Respondents, Fred S. Hamilton, Doris Herf, Bertha Herf (non compos mentis, by her guardian), Otto Boelitz, Hella Hessel and Sigrid Hessel, contend the judgment of the trial court should be affirmed in its entirety.

Respondent, St. Louis Union Trust Company, trustee, signifies its willingness to comply with the terms of the decree rendered by the trial court unless the same is reversed by this court. In this respondent's brief, however, are some helpful suggestions, to which we will refer later in this opinion.

Inasmuch as four of the named beneficiaries had died prior to termination of the trust, the trial court ordered distribution of the corpus of the trust and undistributed income in equal parts to the eight surviving named beneficiaries. We believe such a distribution violates the clearly expressed provisions of the trust indenture applicable thereto. Two of the four deceased beneficiaries, Fritz Herf and Maria Boelitz, each were survived by a descendant or descendants: Fritz by his daughter, Gisela Herf Frei; Maria by her son, Otto Boelitz, and daughter, Liselotte Boelitz Kayser. The trust indenture provided that upon its termination the corpus and undistributed income should be paid over to:

"* * * Fritz Herf, Ernst Herf, Gisela Herf, Bertha Herf if single and unmarried, Ludwig Herf, Doris Herf, Maria Boelitz, Otto Boelitz, Liselotte Boelitz, Hella Hessel, Erna Hessel (Mrs. Koester), and Sigrid Hessel, *and unto the descendants of such of them as may have died prior to such time, in equal shares per stirpes, free from trust*".

This is an explicit direction that the one-twelfth part of the corpus and undistributed income which would have been payable to Fritz had he survived should pass to his sole surviving descendant, Gisela Herf Frei, and the one-twelfth part which would have been payable to Maria had she survived should pass to her two surviving

descendants, Otto Boelitz and Liselotte Boelitz Kayser. No other meaning can be ascribed to the clause "and unto the descendants of such of them as may have died prior to such time, in equal shares per stirpes."

Respondent beneficiaries argue that settlor intended to distribute his residuary estate in equal shares among his beneficiaries, and that to distribute the shares of the two named beneficiaries who had died leaving descendants to such descendants who were also named as beneficiaries gives them a larger portion than the others named in the indenture, contrary to settlor's intention. They cite Mississippi Valley Trust Company v. Walsh et al., 361 Mo. 610, 229 S. W. 2d 675, 680, in support of their contention. The wording of the instrument (a will) and the facts there under consideration were not similar to the instrument and facts here involved. That case merely held that certain persons who were entitled to take under the will as descendants of one of the named beneficiaries could not take another share because of the fact they had been legally adopted by another named beneficiary who had died and whose descendants, had there been any, would have taken her share; that such a construction would do violence to the clearly expressed intention of the testator. The case is not in point. On the other hand, the principles of law announced therein are applicable here: [246] "Property is divided per stirpes when the descendants * * * take by representation by their parent, that is, the children of a child * * * take, among them, only the share which their parent would have taken, if the parent had been living."

It is clear that Gisela Herf Frei succeeded to the interest of her deceased father, Fritz, and that Otto Boelitz and Liselotte Boelitz Kayser succeeded to the interest of their deceased mother, Maria, in equal shares. The corpus and undistributed income is, therefore, divisible into one-tenth parts, Gisela Herf Frei's share being increased from one-tenth to two-tenths portion, and the respective one-tenth share of each of Otto Boelitz and Liselotte Boelitz Kayser by one-twentieth, making each of their shares a three-twentieths part. The Attorney General, as successor to the shares of Gisela Herf Frei ($\frac{4}{20}$ths) and Liselotte Boelitz Kayser ($\frac{3}{20}$ths), thereby is vested with a seven-twentieths interest instead of five-twentieths, as adjudged by the trial court.

Fritz Herf died prior to the death of settlor. The portion of income made payable to Fritz was, therefore, paid until the beginning of the War in 1941 in equal shares, as it accumulated, to Ernst and Gisela, children of Fritz, both of whom were nationals of Germany. It is conceded such distribution was in accord with the direction of the settlor as set forth in paragraph (b) of the trust indenture. However, from the beginning of the War in 1941

until the death of Ernst on December 3, 1943, $5,122.12 in distributable income payable to him had been set aside to his account but not remitted because of war restrictions. Respondent trustee concedes, in effect, that the trial court erred in ordering this sum distributed among the eight surviving named beneficiaries. The only justification offered by respondent beneficiaries in support of the order is the wording of the indenture, which provides that upon its termination "* * * the entire corpus of the trust estate and *undistributed income* shall be paid over to and distributed unto * * *", etc.

This contention is not sound. Title to Ernst's share of income vested as it accumulated and became payable under the terms of the indenture, which were that it be "paid over and distributed in equal quarterly or other convenient instalments * * *." The accrual of income, therefore, would not cease by imposition of freezing controls (Commission for Polish Relief, Ltd. v. Banca Nationala a Rumaniei, 288 N. Y. 332, 43 N. E. 2d 345) or by the commencement of hostilities (Hanger v. Abbott, 6 Wall. [U. S.] 532, 536). The vesting orders of the Attorney General merely served to transfer to him the right to receive these funds. Propper v. Clark, 337 U. S. 472, 483, 484, 69 S. Ct. Rep. 1333. No contention is made the law is otherwise. This fund, $5,122.12, less any taxes or other lawful charges against it, should be ordered paid to the Attorney General as successor in interest to Ernst Herf, deceased.

As stated, $6,275.98 of income accrued on Ernst's share following his death was ordered distributed: one-fourth to Bertha Herf, one-fourth to Hella Hessel, one-eighth to Otto Boelitz, and three-eighths to the Attorney General as successor to Gisela Herf Frei and Liselotte Boelitz Kayser. Paragraph (b) of the indenture has two provisions directing distribution of income in the event of death of beneficiaries. The first clause thereof states: "* * * such net income shall be paid over and distributed in equal shares unto the Donor's nieces, Maria Boelitz and Hella Hessel, and the Donor's nephew, Fritz Herf, until the termination of this trust as hereinafter provided, or until the date of their respective deaths, and from and after the death of any of the said beneficiaries during the existence of this trust, their respective shares in the income arising from the trust estate shall be paid over and distributed in equal shares per stirpes unto their respective descendants until the termination of this trust as hereinafter provided; * * *." The second clause thereof states: "* * * or if any of the said beneficiaries of this trust shall die prior to its termination without descendants him or her surviving, then the share of such deceased beneficiary so dying without descendants him or her surviving, in the income

arising from the [247] trust estate shall be paid over and distributed unto the other beneficiaries herein named in paragraph (b) hereof, and unto the descendants of any such beneficiaries who may have died prior to such time, in equal shares per stirpes, until the termination of this trust, * * *."

Appellant contends the first clause controls as to distribution of the share of income payable in the first instance to Fritz Herf and upon his death to his descendants, Ernst and Gisela. Respondent beneficiaries contend the second clause controls and that the trial court correctly ruled the issue. Concededly, "the answer ultimately depends upon the manifestation of the intention of the settlor." No authorities have been cited, nor do we find any that are decisive of the question.

We are convinced, however, the first clause is controlling. It specifically provides that upon the death of Fritz, or Maria, or Hella, "their respective shares * * * shall be paid over and distributed in equal shares per stirpes unto their respective descendants * * *." There is no ambiguity in that language. By virtue of its provisions, Ernst and Gisela took the full share of income originally payable to their father, Fritz, upon his death. The *share* of Fritz in accumulated income is payable to his descendants as a stirps, and it is continued to be so payable "until the termination of this trust." It follows that upon the death of Ernst the entire stirps passed to Gisela. Nor do we think the second clause detracts from, nor is meant to apply to, the situation here under consideration. It is our view the second clause would become applicable to distribution of income in the event no descendants were left to take the shares of either of the named beneficiaries, Maria, Hella or Fritz (and in the case of Bertha, if there were no descendants of the nephew, Oscar). The share of income credited by the trustee to the estate of Ernst following his death, less any lawful charges thereon, should be ordered paid to the Attorney General.

Appellant's final contention is that each of the twelve named beneficiaries took a vested remainder in the corpus of the trust and that upon the death of Ernst Herf and Erna Hessel Koester without descendants their respective shares are payable to the Attorney General. It is his position that no provision is made in the trust indenture for succession to the title of the share of any named beneficiary dying without surviving descendants; and that according to settled principles of construction settlor must be taken to have intended such interests to be vested remainders subject to divestiture upon a remainderman's death survived by descendants, but otherwise indefeasible. It is the contention of respondent beneficiaries, and such was the theory adopted by the trial court, that the named beneficiaries took as contingent remainder-

men and the trust was a gift to the named beneficiaries and their descendants as a class. The provision of the trust indenture which affords the basis for this argument is: "Upon the termination of this trust * * * the entire corpus * * * shall be paid over and distributed unto Fritz Herf, Ernst Herf, Gisela Herf, Bertha Herf if single and unmarried, Ludwig Herf, Doris Herf, Maria Boelitz, Otto Boelitz, Liselotte Boelitz, Hella Hessel, Erna Hessel (Mrs. Koester), and Sigrid Hessel, and unto the descendants of such of them as may have died prior to such time, in equal shares per stirpes, free from trust; * * *."

Appellant aptly states the two basic rules governing the construction of this clause: "The first is that the intention of the settlor is controlling, and to this end the instrument 'must be read from its four corners and effect given to all its plain provisions' (First Trust Company v. Myers, supra, 351 Mo. at 906, 174 S. W. 2d at 380; see also St. Louis Trust Co. v. Kelley, 355 Mo. 924, 933, 199 S. W. 2d 344, 349). Second, where the intention of the settlor is in doubt, the law favors vested estates 'because that usually better conforms to the testator's meaning' (St. Louis Union Trust Co. v. Kaltenbach, 353 Mo. 1114, 1122, 186 S. W. 2d 578, 582; see also St. Louis Union Trust Co. v. Kelley, supra). When the testator's intention is not clearly expressed, the remainders can be held contingent only upon a very strong showing that the settlor so intended."

[248] Appellant cites some forty-nine source notes of texts, cases and other authorities in support of his contention. Respondent trustee suggests, and we have so found after diligent search, that cases from other jurisdictions are of little aid. Appellant and both respondents agree that the two Missouri cases most nearly in point are: Gardner v. Vanlandingham, 334 Mo. 1054, 69 S. W. 2d 947, and Kingston v. St. Louis Union Trust Co., 348 Mo. 448, 154 S. W. 2d 39. Appellant relies strongly upon the Gardner case. Respondent beneficiaries rely strongly upon the Kingston case. The Gardner case held the instrument there under consideration created vested remainders. The Kingston case held the instrument there under consideration created contingent remainders. Respondent trustee "is not convinced that the trial court erred in the instant case in refusing to find that vested remainder interests in the named beneficiaries were created."

The rule announced in the Gardner case for the construction of instruments involving the question here at issue is adopted by reference in the Kingston case. It is: "* * * the law favors vested estates, so that, unless the testator has by very clear words manifested his intention to the contrary, the persons who take under his will, as the members of a designated class, must be determined

at the death of the testator and the estates given them vested then. * * * As a result of these rules, it is generally held that, in the absence of a clear contrary indication, those who compose a class described in a will as the testator's heirs, to whom a remainder or executory interest is given, are to be ascertained at the death of the testator * * *; and that a remainder given to them thereby is vested in them at that time * * *." Loc. cit., 950.

The instrument under construction in the Gardner case gave a life estate to testator's widow and then directed "* * * at her death I direct that residue of my estate be divided equally among my heirs. In the event of the death of any of my heirs, then the share they would have received if living shall descend to their issue." It was held that the phrase in the above quoted direction in the will, "among my heirs", meant the testator's heirs at the time of his death, and that the clause, "the death of any of my heirs", meant those heirs that died after the death of the testator and before the death of the widow; and that testator's heirs upon his death took a vested remainder, subject to divestiture if any of them died thereafter and before the death of the widow. There was no statement in the will nor fact in evidence to show any contrary intention on the part of the testator. Hence, the court followed the rule that the law favors vested remainders unless there is a clear expression of a contrary intention.

In the Kingston case the clause under consideration provided: "Upon the death of any of the said beneficiaries, except" (certain persons named) "the amounts theretofore payable to them hereunder shall be added to the corpus or principal of the estate, for the benefit of any residuary legatees, as hereinafter provided." In the residuary clause the testatrix said that when certain events came to pass, "* * * this trust shall cease and the property then composing the trust estate, together with the then unexpended or undivided income therefrom, shall be distributed equally, share and share alike, among, and paid to, the said" (naming certain persons) "and their respective descendants, if any shall have died leaving other descendants surviving, per stirpes and not per capita."

In construing that provision the court held: "Neither can we agree with plaintiffs that they have a vested remainder in the corpus of the estate. As said above, the intention of the testatrix must govern. While the law favors vested remainders, and where doubt exists declares a remainder to be vested rather than contingent, yet that is not or should not be done where it is apparent that a contingent remainder was intended. * * * If we construe the will so as to create in plaintiffs a vested remainder, then plaintiffs have the power to make disposition thereof either by will or conveyance. In such a case, if a number of plaintiffs should dispose of their

remainder and die prior to the termination of the [249] trust, leaving descendants, what answers are the trustees to make to such descendants, who may be the minor defendants in this case or descendants yet unborn, in answer to a demand by them of their distributive share of the estate? The trustees have been directed that when the trust ceases they are to distribute the property then composing the trust estate, together with the then unexpended or undivided income, among plaintiffs and their respective descendants. The trustees will not be able to comply with that direction of the will if we should hold that plaintiffs were given a vested remainder in the corpus of the estate."

Appellant takes exception to the concern given by the court that if the remainders created by the instrument there under construction were held to be vested, the beneficiaries would have had "the power to make disposition thereof either by will or conveyance", and thereby make it impossible for the trustee to make distribution to the descendants as required by the trust. Appellant argues that in Missouri both contingent and vested remainders are equally alienable and that the court, therefore, was not justified in considering such a possibility as a determinative factor in the case. Appellant further argues that even if the rationale of the Kingston case that contingent remainders are not alienable is adopted, yet the trust indenture here under construction takes care of that situation with a provision, as follows: "None of the beneficiaries of the trust herein created shall have the power or authority to assign, pledge or otherwise anticipate any income or equitable interest to which they may be entitled under the terms of this indenture, * * *." We do not believe this clause was written with a conscious thought on the part of settlor that he had created vested and, hence, alienable remainders. Rather do we construe it as an admonition to beneficiaries not to alienate or attempt to alienate their interests and a caveat to any person who might seek to acquire them. In any event, however, the above quoted provision would not, by its terms, serve to prevent transfer of an interest by will or the laws of intestacy, if it were an otherwise transferable interest.

After careful consideration of the instrument here in question, we are convinced the intention of the settlor is so manifestly shown by the "four corners of the instrument" that prolonged discussion of the application of the above quoted rules of construction in other cases is neither necessary nor advisable.

The recital that settlor "has created this trust for the benefit of his relatives named herein" is of especial significance. The named beneficiaries [excluding for the moment Bertha Herf and the children of her deceased husband, Oscar Herf] were settlor's only blood relatives. Appellant urges that the inclusion of Bertha reveals

settlor used the word "relatives" in such a general sense as to render it of no import. We believe, however, her inclusion, under the circumstances as they existed when the indenture was written, points up and tends to accentuate the general intention of settlor to provide for the relatives of his blood. It may be likened to an exception that proves the rule. Bertha was designated as a recipient of income so long as she lived and *remained unmarried*; and she was to receive a share of the corpus if living *and unmarried* at the termination of the trust. Just so long as she cleaved to the Herf family, and no longer, did she share. She was the head of her deceased husband's family. So long as she remained a Herf, the family was essentially a Herf family. Settlor carefully provided, however, that in the event of her death or remarriage accruing income and corpus should be payable to the "descendants of Donor's deceased nephew, Oscar," —a reversion back to the blood line.

The further clause that if "there shall be a complete failure of beneficiaries hereunder, then the corpus of the trust estate and undistributed income shall be paid over and distributed in equal shares unto the Barnes Hospital * * * and the Lutheran Hospital * * *, free of trust" is a clear manifestation of settlor's intention that undistributed income and corpus [with the exception of Bertha] is to be paid [250] over to the named beneficiaries and their descendants in settlor's blood line as long as one remains. When none remains, the corpus—not part of it, not such as was left, but all of it—is to be paid to the named hospitals.

Neither do we think certain provisions of the settlor's will raise any doubt settlor's intention was as above stated. The will did provide "* * * One Thousand Dollars to each of my nephews, Henry H. Whittemore and Clinton L. Whittemore, and a like sum to my niece, Elise Whittemore, * * *". Appellant argues this bequest shows settlor had other kin not named in the indenture who stood in the same degree of relationship to him as some who were named, and that such fact is evidence settlor did not intend a gift to his "relatives" as a class. The Whittemores were children of settlor's deceased wife's sister. They were not of settlor's blood. The bequests were insignificant in amount as compared to the gifts to his blood relatives. The argument is not persuasive.

There is no justifiable basis for the contention settlor intended to so invest the persons named as beneficiaries with such an interest in this estate that the corpus, or any part thereof, might pass into the hands of strangers through the channel of vested remainders in the event of any of the beneficiaries dying without descendants. This is to say: it is our conclusion settlor intended a gift to his "relatives therein named" [and Bertha] as a class, with the proviso that if there were a complete failure of the class, then the hospitals were to take.

564

We hold the corpus of the estate and any undistributed income, other than the aforesaid income accrued and payable as Ernst's share, less any lawful charges against same, should be paid over as follows:

One-tenth to Bertha Herf (through her legal guardian, Dr. C. Staehelin);

One-tenth to Fred S. Hamilton;

One-tenth to Doris Herf;

Three-twentieths to C. Otto Boelitz;

One-tenth to Hella Hessel;

One-tenth to Sigrid Hessel; and

Seven-twentieths to the Attorney General of the United States, as successor in interest to Gisela Herf Frei (four-twentieths) and Liselotte Boelitz Kayser (three-twentieths).

The cause is reversed and remanded for such further proceedings herein as may be necessary to effectuate the views herein expressed. All concur.