**MERCANTILE TRUST COMPANY, a Corporation, Co-trustee under the inter vivos trust agreement of Charles C. Kilgen, Respondent,**

**v.**

**George J. KILGEN, in his individual capacity and as Co-trustee under the inter vivos trust agreement of Charles C. Kilgen, Appellant,**

**Eugene R. Kilgen et al., Respondents.**

**No. 45592.**

Supreme Court of Missouri.

Division No. 1.

Jan. 14, 1957.

Rehearing Denied and Opinion Modified on Court's Own Motion Feb. 11, 1957.

Sigmund M. Bass and John Grossman, St. Louis, for appellant.

Joseph Renard, St. Louis, for respondents Charles C. Kilgen, Jr., and Eugene R. Kilgen. Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, of counsel.

DALTON, Judge.

Action by a co-trustee under a certain inter vivos trust agreement against another co-trustee under the same trust agreement and other defendants for a construction of the trust agreement and other written documents and for instruction as to whether the distributive share of George J. Kilgen under the trust agreement should be charged with the indebtedness evidenced by two notes of George J. Kilgen held by the trust estate and, if so, as to the extent of the charge.

■ The trial court ordered the full amount of the principal and interest of said notes, amounting to approximately $25,600, charged against the distributive share in question, amounting to approximately $24,500. George J. Kilgen, as beneficiary and co-trustee, has appealed and contends that no charge on account of said notes should be made against his distributive share and, further, that an allowance of attorneys' fees made by the court to appellant's attorneys should have been in a substantially larger sum. This court has jurisdiction of the appeal, since the amount involved exceeds $7,500. Art. V. Sec. 3, Const. of Mo. 1945, V.A.M.S.; Scullin v. Mercantile-Commerce Bank & Trust Co., 361 Mo. 337, 234 S.W.2d 597, 599.

The facts and detailed provisions of the trust agreement and the terms of the other documents which appellant contends modified the trust agreement are not in dispute.

Charles C. Kilgen by an instrument dated May 11, 1931, created an inter vivos trust and named himself and the Mississippi Valley Trust Company as co-trustees. Kilgen died May 6, 1932 and, as provided by the terms of the trust instrument, he was succeeded as co-trustee by his widow, Ida J. Kilgen. After her death on September 30, 1954, she was succeeded as co-trustee by appellant George J. Kilgen. The respondent Mercantile Trust Company is the successor to the Mississippi Valley Trust Company and is now a co-trustee under the trust agreement and as such trustee instituted the present action naming George J. Kilgen in his individual capacity and as co-trustee of the trust among the defendants. In his answer appellant asked the court to find that the trust estate was not entitled to the amount of the indebtedness evidenced by his notes or the interest thereon; that his distributive share, as beneficiary under the trust agreement, be not charged with either the principal or interest of said notes; and that a reasonable attorneys' fee for the attorneys repre-

senting him in his capacity as co-trustee be allowed and paid out of the corpus of the trust estate.

The second paragraph of the trust agreement provided that out of the net income of the trust estate, while the grantor and his wife were living, the trustees were to pay the grantor's wife, Ida J. Kilgen, the sum of $600 per month and the balance of such income was to be paid to the donor in as nearly equal monthly installments as may be practicable. Upon the death of either Ida J. Kilgen or the grantor, the trust provided that the accumulated income should be paid to the survivor of them and all income thereafter received should be paid in as nearly equal monthly installments as may be practicable to the survivor during his or her natural life.

The third paragraph of the trust agreement provided that the trust should terminate upon the death of the survivor of the grantor and his wife and that "all the property then constituting the trust estate, both principal and income then accrued or on hand and not advanced to either of the life tenants hereunder, shall be transferred, free of trust, as follows:" Then follows, in said paragraph, the description of the takers upon the termination of the trust, and included among said takers, is appellant George J. Kilgen, who, in his individual capacity, is given one-eighth (⅛) of the trust estate.

The trust terminated with the death of the grantor's wife, Ida J. Kilgen, on September 30, 1954.

Included in the assets of the said trust estate at the time it was created were two promissory notes of George J. Kilgen, each payable to Charles C. Kilgen, in the principal amount of $2,500, dated November 4, 1926, and due November 4, 1927, and bearing interest at the rate of 6% payable annually, "and if interest be not paid annually to become as principal and bear the same rate of interest until paid." The notes bore the endorsement of Charles C. Kilgen and they were still among the assets of the trust estate when the trust terminated. No payments of principal or interest were ever made on either of these two notes.

Charles C. Kilgen, the grantor of said trust, reserved the right to alter, amend or revoke the trust, in whole or in part, as follows: "The trust is hereby created and the interests hereunder are vested subject to the express condition and reservation that the grantor may at any time or from time to time alter or amend the terms of this Indenture or may revoke this Indenture in whole or in part, and may free any sum or sums of money, securities or other property from the terms of this trust at any time or from time to time during the grantor's lifetime, each such right to be exercised by written notice to that effect, executed by the grantor and delivered to the trustees hereunder, and as and when duly requested the trustees shall deliver to the grantor or to whomsoever he shall designate, all or any part or parts of the property held under the terms of this trust."

The trust agreement further provided that upon termination of said trust, distribution of the corpus was to be subject to the following provisions: "The foregoing schedule of distribution under the terms of this article Third is hereby made subject to the condition that as to each son of the grantor whose notes form part of the assets of the trust estate at the termination of this trust, it is hereby directed that his share of the trust estate if he be then living otherwise the share of the trust estate which would be transferable to him hereunder if then living, shall be charged with the sum total of his said notes and if the aggregate sum of such notes be larger than his share of the trust estate as above set out, then such excess sum due on such notes shall be deemed cancelled and the other shares of the trust estate set apart by the foregoing provisions of this Article Third, shall thereupon be proportionately reduced so as to make proper allowance for such depletion of the assets of the trust estate."

Thereafter, on May 13, 1931, the grantor wrote the Mississippi Valley Trust Company, the then co-trustee of said trust, a letter which, in part, read as follows: "As part of the securities deposited under the above trust there were two notes of George J. Kilgen each for $2500.00, dated November 4, 1926, due November 4, 1927, with interest at 6% from date. No interest has been paid on these notes since they were executed and I hereby request that you make no effort to collect either the principal or the interest on these notes."

Thereafter, on June 18, 1952, the grantor's wife, Ida J. Kilgen, who had survived him, and was then receiving all of the net income until her death, wrote her co-trustee, the Mercantile Trust Company, a letter which reads as follows:

"Gentlemen: At the time of the creation of the trust by Mr. Charles C. Kilgen, under his agreement dated May 11, 1931, he transferred to the Trust Estate two notes of George J. Kilgen, each for $2500.00 dated November 4, 1926, due November 4, 1927, bearing interest at the rate of 6% per annum from date. By the terms of said Indenture of Trust, Mr. Kilgen reserved to himself the right and power to alter the terms of the Trust at any time or from time to time by written notice to the Trustees and, pursuant to such power, and to declare his intentions in respect to the above mentioned notes, Mr. Kilgen, under date of May 13, 1931, notified Mississippi Valley Trust Company, Co-trustee· under said Indenture, of his intention that no effort be made to collect either the principal or interest on said notes. In accordance with such request and direction of Mr. Kilgen, I, as life tenant of the Trust and as successor individual co-trustee, have assented that no effort be made to collect either interest or principal on said notes, until, upon termination of the trust, an adjustment be made in respect to said notes as provided in paragraph 'H' of Item Third of the Trust Indenture; and I have waived and hereby waive any right I may have to receive any interest on said notes accruing during the period of the trust * * *."

As stated, appellant contends that the court erred (a) in charging the principal and interest of the two notes against the distributive share of George J. Kilgen; and (b) in charging the interest on said notes against the distributive share of George J. Kilgen. Appellant relies upon the letters of May 13, 1931 and June 18, 1952 and says that he has segregated principal from interest because the issues are based upon different reasoning, as is disclosed in his argument in support of his position. His theory is that the "grantor waived both principal and interest, and the life tenant waived the interest." As to the first point appellant says the title to the two promissory notes vested in the co-trustee under the trust agreement subject, however, to divesture by revocation or modification by the grantor of the trust as provided in the trust agreement; that the grantor having reserved the right to do so could amend or revoke any trust indenture thereunder; and that the letter written by Charles C. Kilgen, the grantor, on May 13, 1931, two days after the creation of the trust, constituted a revocation or modification of the trust agreement with respect to the two notes in question; that the letter was a strict compliance with the mode of alteration, revocation or modification provided in the agreement; that the letter plainly told the co-trustee that the principal and interest of the notes should not be collected or charged against the distributive share of George J. Kilgen. Appellant asks us to construe the trust agreement of May 11, 1931 and the letter of May 13, 1931, together and to hold that the trust agreement was modified as contended by him.

■■ It is well settled law in this state that the cardinal rule to be observed in the construction of a trust instrument is to ascertain the settlor's intention from the trust instrument, considered as a whole, and to give effect to such intention, if possible. Krause v. Jeannette Inv. Co., 333 Mo. 509,

62 S.W.2d 890, 892; St. Louis Union Trust Co. v. Clarke, 352 Mo. 518, 178 S.W.2d 359, 363; St. Louis Union Trust Co. v. Herf, 361 Mo. 548, 235 S.W.2d 241, 247. In this instance the settlor reserved the right to alter or amend the terms of the trust instrument or to revoke, in whole or in part, and to free any securities or any property from the terms of the trust during his lifetime by written notice, as stated. The first issue presented here is whether the letter of May 13, 1931, modified the trust instrument so that the two $2500.00 notes in question and the accrued interest thereon should not be charged against George J. Kilgen in accordance with the trust instrument as originally written. Under the facts here we consider the two instruments together to determine the extent, if any, to which the original plan was modified by the subsequent letter. Ervin v. Davis, 355 Mo. 951, 199 S.W.2d 366, 369.

The facts are not in dispute. The notes in question were long past due when they were endorsed by Charles C. Kilgen and placed in the trust estate. No principal or interest had been paid. They were unsecured except by the signature of the maker. The trust agreement provided that the schedule of distribution of assets at the termination of the trust was subject to the condition that each son's share should be charged with unpaid notes forming a part of the assets of the trust estate. In such situation the letter of May 13, 1931 was written. It is clear, definite and certain. No ambiguity appears. The letter evidences no intention to withdraw the notes from the corpus of the estate and it evidences no intention that the principal and interest, if unpaid, should not be charged against the distributive share of George J. Kilgen in accordance with the terms of the original trust agreement. Nor can the terms and provisions of the letter be considered a waiver of "whatever rights the grantor had as beneficiary of the trust to the interest on the notes."

The letter says "I hereby request that you *make no effort to collect* either the

principal or the interest on these notes." (Italics ours.) No doubt the letter was intended to serve a double purpose, first, to relieve the maker of the notes from harassment to obtain payment thereof and, second, to excuse the co-trustee from any possible liability for failure to make an effort to collect these items. Another note executed by George J. Kilgen and Ruth Kilgen, dated March 14, 1927, due March 14, 1932, bearing interest at 5½ percent payable semi-annually, secured by a first deed of trust on particularly described real estate had been made a part of the trust estate. It was not mentioned in the letter. A stipulation filed indicates that this note was ultimately fully discharged. The terms of the letter of May 13, 1931 afford no basis for not charging the principal and interest of the two $2,500 notes against the distributive share of George J. Kilgen as directed by the trust agreement.

█ Appellant next contends that Mrs. Ida J. Kilgen, widow of Charles C. Kilgen, and life tenant and beneficiary under the trust agreement, was entitled to all of the interest on the two notes after the death of the grantor; and that she in writing by her letter of June 18, 1952 waived that interest. Appellant further says that the power to revoke the trust indenture was personal and exclusive to the grantor of the trust; that it did not pass to his successors on his death; that Mrs. Kilgen, as successor co-trustee, did not possess any power or right to revoke or countermand the grantor's partial revocation; that that portion of her letter of June 18, 1952, suggesting an adjustment in respect to the notes upon termination of the trust, was unauthorized and of no moment; and that accordingly none of the interest accruing on said notes should be charged against the distributive share of George J. Kilgen.

As stated, the notes in question were dated November 4, 1926. They were placed in the trust estate on May 11, 1931. Charles C. Kilgen died May 6, 1932. Interest had been accruing on the notes since November

4, 1926. No interest was collected or received by the trust estate at any time. Ida J. Kilgen died September 30, 1954 and the trust terminated. The second paragraph of the trust agreement provided: "Upon the death of either the said Ida J. Kilgen or the grantor, all the net income of the trust estate *then on hand* shall be paid to the survivor of them, and *all income thereafter received from the trust estate* and not advanced to said deceased person *shall be paid* in as nearly equal monthly installments as may be practicable *to such survivor* during his or her natural life." (Italics ours.)

It is apparent that the interest accruing on the notes in question was not *received* by the trustees because it was never paid. It was never available for payment to the life beneficiary, Ida J. Kilgen. The trust agreement further provided: "Upon the death of the survivor of the grantor and the grantor's said wife, the trust herein created shall terminate *and all the property then constituting the trust estate, both principal and income then accrued or on hand and not advanced to either of the life tenants hereunder,* shall be transferred, free of trust, as follows: * * *" (naming the beneficiaries).

It appears that Ida J. Kilgen, although a beneficiary and co-trustee of the trust, had no authority to modify the terms of the trust. However, in construing her letter of June 18, 1952, and determining her intention, as therein expressed, we must consider the letter as a whole. That part of her letter stating: "And I have waived and hereby waive any right I may have to receive any interest on said notes accruing during the period of the trust," cannot be construed separate and apart from that part of her letter stating that she "assented that no effort be made to collect either interest or principal on said notes, until, upon termination of the trust, an adjustment be made in respect to said notes as provided in pargaraph 'H' of Item Third of the Trust Indenture."

The notes in question were owned and held by the trust estate. While as surviving life tenant Ida J. Kilgen was entitled to receive the *accumulated* income from the trust estate "and all income *thereafter received,*" during her lifetime, the trust agreement provided that upon her death, if she survived her said husband, that "all the property then constituting the trust estate, both principal and income *then accrued* or on hand *and not advanced to either of the life tenants* hereunder, shall be transferred, free of trust, as follows: * * *." That is to the named beneficiaries. The interest on these notes was *never received.* It was not advanced to either life tenant. It merely continued to accrue. The notes remained the property of the trust estate. While, if the interest had been collected and received by the trust estate, Ida J. Kilgen would have been entitled to receive it, it was not so collected, nor received by the estate. In any case, the statement that "I have waived and hereby waive any right I may have to receive any interest on said notes accruing during the period of the trust" did not cancel any accrued interest on the notes, or credit the notes with the payment of interest. The letter evidences no intention that the unpaid interest should not, at the termination of the trust, be charged against the distributive share of George J. Kilgen. The effect of the waiver provision of the letter was to let the uncollected interest remain as a part of the trust estate. The letter of June 18, 1952 constituted no legal basis for said notes and the accrued interest thereon not being charged against the distributive share of George J. Kilgen, as provided in the trust agreement.

Concerning the allowance of attorneys' fees: The two co-trustees had disagreed as to the proper construction.of the trust instrument in view of the two letters hereinbefore referred to and, since no agreement could be reached with reference thereto, this action was instituted and appellant was made a defendant in his indi-

vidual capacity and as a co-trustee. He filed an answer admitting the facts, as pleaded, and setting forth his views as to the proper construction of the trust instrument and letters relied upon. After the court made its ruling on the issues there presented, applications for the allowance of attorneys' fees were filed. The court allowed the attorneys for the co-trustee, who had instituted the action, the sum of $1,250, the attorneys for certain defendants, who contested appellant's claimed construction of the trust instrument and other documents, the sum of $500, and appellant's attorneys $250 for representing him in his capacity as co-trustee. Respondents did not appeal and they do not contest the allowance that has been made to appellant's counsel. They do say that none should have been made, since appellant was not protecting the estate and had no interest to protect except his own, which conflicted with the interest of the trust estate. Appellant, however, contends the allowance to his attorneys was wholly inadequate.

Appellant's counsel filed an application for an allowance of $2,500 for services rendered to appellant as co-trustee. Evidence was heard in support of the claim and only the $250 mentioned was allowed. In the trial of the cause counsel had represented the appellant both in his individual capacity and as co-trustee. Counsel waived any claim for fees for representing appellant individually as a beneficiary of the estate.

With reference to whether the services in question were rendered to George J. Kilgen individually or to him as co-trustee, his counsel testified: "That if Mr. Kilgen was not even a beneficiary of this trust, and was a co-trustee, I state that I would have to go through the same investigation to determine the facts and present them to this court. * * * There was no one else presented (sic) the other side of the case to the court while the case was pending up to the time the court wrote its opinion. * * * The matter presented an unusual and unique proposition of law. When I say 'unique' I mean it was difficult to pinpoint any case which in fact was similar to the one involved, although the general proposition of law was and had been prior thereto gone into in numerous cases."

Counsel testified that the total time required was 120 hours and the reasonable value of the services rendered was $2,500. The services rendered included the following: Advising George J. Kilgen to accept the appointment as co-trustee after the death of Ida J. Kilgen, conferences with the other co-trustee and others, examination of the trust instrument and other documents, extended conferences with appellant, the making of a full investigation of the factual situation, including the making of numerous long distance telephone calls and extensive correspondence, since client was a resident of California, and the defense of the suit instituted by the other co-trustee, including the preparation of an answer, attending a pre-trial conference, examination of opposing briefs, attempting to answer legal propositions or theories presented by opposing counsel, the preparation of a brief on the issues before the court and the preparation of a reply brief.

There was further testimony that one of the attorneys employed was appellant's brother-in-law; that appellant in his capacity as co-trustee had certain duties to perform; that "while they might have been synonymous or identical, nevertheless he did have a duty as co-trustee"; that there had been no segregation of time spent for appellant in his individual capacity and as co-trustee, "because * * * the same time would have been consumed if he had not been a beneficiary in the trust"; that counsel saw no conflict of interest between appellant's interest as an individual and as a co-trustee because they were the same; that "it just happened that their interests in that respect, their beliefs in that respect, happened to be identical"; and that the investigation made in connection with the claim of George J. Kilgen for a distributive share in this estate was made also for George J. Kilgen as co-trustee.

There was evidence that the total amount in the trust at the date of the hearing available for the payment of attorneys' fees was $4,490. The trust estate consisted of real estate of the approximate value of $75,000 and personal property of the approximate value of $60,000.

Appellant in support of the claim for a larger sum for his attorneys further points to section 6 of the trust instrument, as follows: "The trustees or trustee at the time in charge of the trust estate may at any time or from time to time engage the services of counsel as well as do any other thing or act deemed advisable by such trustee or trustees in order to protect and properly manage the trust estate, and the trustee or trustees shall be reimbursed out of the principal of the trust estate for all liability and expense incurred in regard to the trust estate."

While no evidence was offered in opposition to the testimony offered in support of the claim of appellant's counsel for an allowance of attorneys' fees for representing him in his capacity as a co-trustee, the credibility, weight and value of the oral testimony was for the trial court in the first instance. No evidence was offered concerning the contract of employment between appellant, as co-trustee, and his counsel. The extent of the co-trustee's liability to counsel for the services rendered does not expressly appear. No question of reimbursement of a co-trustee for expenses incurred is involved.

Appellant argues that "the fact that his counsel's efforts served his own private interests as well as his interest as co-trustee should not defeat his right to an allowance out of the estate of a reasonable attorney's fee." Appellant relies upon Lang v. Taussig, Mo.App., 194 S.W.2d 743, 748, but the case does not support appellant under the facts before us.

We do not pass on the question of whether an allowance of attorneys' fees to appellant's counsel was proper under the facts and circumstances here, since the amount allowed is not opposed by respondents. However, the trial court was fully advised as to the issues involved in the case tried. Some of the services mentioned were within the personal knowledge of the trial judge. He saw and heard the witness and was in a better position than this court to determine the credibility, weight and value of the testimony. The record presented here fails to show that the court erred in refusing to award appellant's counsel a larger fee.

The judgment should be affirmed. It is so ordered.

All concur.