**In the ESTATE OF Leslie O. FRAILEY, Deceased.**

**G. Larry REHM, Plaintiff-Appellant,**

**v.**

**Audrey PULLING, Executrix of the Estate of Leslie O. Frailey, Deceased,**

**Audrey Pulling, Ethel Long, Flossie Wellman, Cora Lacey, Pearl Rodgers, Ruby Causey, Edna Coffee and Elsie Sifford, Defendants-Respondents.**

**No. 12223.**

Missouri Court of Appeals, Southern District, Division Three.

Nov. 24, 1981.

Donald R. Rhodes, Bloomfield, for plaintiff-appellant.

James E. McGhee, James E. Spain, Briney, Welborn & Spain, Bloomfield, for defendants-respondents.

242

PER CURIAM:

On September 19, 1955, Leslie O. Frailey and Minna Frailey, his wife, executed an instrument entitled "Articles of Agreement and Mutual, Joint and Irrevocable Will". This instrument first recognized that these parties owned three tracts of real property as tenants by the entirety. Each tract was separately described. The instrument then provides "the survivor shall take all of the personal property of the deceased, absolutely, and shall have full enjoyment of all of the real estate". Article III provides that after the death of the survivor, Tract No. I "shall go in equal parts to the named brother and sisters of the husband, Leslie O. Frailey, to-wit: Frank Fulton Frailey, Ethel Long and Flossie Wellman and their descendants, per stirpes, in fee. Provided however that if Frank Fulton Frailey should die before the survivor of us, then the part that he would have taken, if alive, shall go to a niece of Leslie O. Frailey, to-wit: Elsie Sifford and her descendants, per stirpes, in fee."

It then provided that Tract II "shall go to the named sisters of the wife, Minna Frailey, to-wit: Cora Lacey, Edna Coffey, Pearl Rodgers and Ruby Causey in the following shares, to-wit: Cora Lacey, Edna Coffey and Pearl Rodgers, shall each take a three-tenth (³⁄₁₀th) interest and Ruby Causey shall take a one-tenth (¹⁄₁₀th) interest, and to their descendants, per stirpes, in fee."

Tract No. III was devised to a church.

Article IV provided that the residue, after the death of the survivor, should go to "the heirs of the last deceased, per stirpes".

Minna Frailey died first, although the record does not show the date of her death. On November 30, 1965, Leslie O. Frailey executed a Codicil by which he revoked Article IV and provided:

I give, devise and bequeath all of my personal property, including, cash, bonds, bank accounts and all other items, to my brother, Frank Fulton Frailey; my sisters, Ethel Long and Flossie Wellman; AND to my deceased wife's sisters, Cora Lacey, Pearl Rodgers, Ruby Causey and Edna Coffey, and to their descendants,

per stirpes; Except that if Edna Coffey should predecease me then Audrey Pulling shall take the full share of Edna Coffey; to share and share alike.

Under the language of the mutual will pertaining specifically to revocation and the stipulation and briefs of the parties, no issue has been raised concerning the efficacy of that revocation. Leslie O. Frailey died on October 4, 1979. His brother, Frank Fulton Frailey, had predeceased him, having died on October 3, 1973. Frank died without issue.

Leslie O. Frailey had a sister in addition to his sisters Ethel Long and Flossie Wellman named in the Will and the Codicil. This sister's name was Bessie Rehm. Bessie Rehm also predeceased Leslie O. Frailey, having died on November 30, 1977. Bessie Rehm left surviving seven children, including the plaintiff-appellant, G. Larry Rehm.

By his petition the appellant seeks to have the Will and Codicil construed to establish that he has an interest in the estate of Leslie O. Frailey. The cause was submitted to the trial court upon a stipulation of the above facts with no additional evidence. In such circumstances, the Will and Codicil must be construed to give effect to the intent of the testator as determined from those instruments with the aid of the meager stipulated facts. *St. Louis Union Trust Co. v. Bethesda General Hosp.*, 446 S.W.2d 823 (Mo.1969). The trial court concluded that under paragraph II of the Codicil, the named sisters of the testator and his deceased wife, all of whom survived, take all of the personal property of the testator and that the appellant takes nothing.

The petition does not allege upon what legal basis the appellant claims an interest in the estate of the decedent other than such an interest is claimed under paragraph II of the Codicil. By his brief the appellant bases his claim upon an ingenious argument centered upon the meaning of the word "descendants". He first points out tract No. I was devised to "the named brother and sisters of the husband, Leslie O. Frailey, to-wit: Frank Fulton Frailey, Ethel

Long and Flossie Wellman and their descendants, per stirpes, . . . ." He then argues that the word "descendant" does not always bear the same meaning, and may even include collateral kindred, citing *St. Louis Union Trust Co. v. Kelley*, 355 Mo. 924, 199 S.W.2d 344 (1947). He then argues that by the "provided" clause, the testator defined the "descendants" of Frank Fulton Frailey to be a "niece or her equivalent". He concludes that a sister is the equivalent of a niece and therefore the devise in the Codicil to Frank Fulton Frailey does not lapse but passes to his sisters and the children of his deceased sister, Bessie Rehm.

The term "descendant" is normally defined as " 'one who is descended from another; a person who proceeds from the body of another, such as a child, grandchild, etc., to the remotest degree.' Black's Law. Dictionary, Fourth Ed." *Mercantile Trust Company v. Muckerman*, 377 S.W.2d 355, 359 (Mo.1964). The term may bear another meaning established by the context in which the term is used or by the instrument otherwise defining that term. *Mercantile Trust Co. v. Muckerman*, supra. Assuming, as the appellant does, that by the reference to descendants, the testator intended to provide for substitutional devisees, it does not follow that in regard to Frank Fulton Frailey, the term means niece or equivalent. If, by the "provided" clause, the testator defined the term "descendant" as used in connection with Frank Fulton Frailey, it is more logical to conclude that he defined that term to mean Elsie Sifford and her descendants. If the appellant's theory is followed, then in the Codicil the descendants of Edna Coffey have been defined to mean Audrey Pulling or her equivalent. Such strained constructions are not required or supported by the instruments in question when construed in the light of the factual background.

■ The appellant's contention that the share of Frank Fulton Frailey did not terminate is without merit. Frank Fulton Frailey left no descendant to be a substitutional devisee under the terms of the Will. While he was related to the testator, he left no lineal descendants within the meaning of § 474.450, RSMo 1978, and therefore, that anti-lapse statute is not applicable. *Holloway v. Burke*, 336 Mo. 380, 79 S.W.2d 104 (banc 1935). The decisive question is whether the devise of "all my personal property" is a devise of a ⅛th share to each of the named persons as individuals or is a devise to a class of which the seven persons were members. If it is a devise to Frank Fulton Frailey or his descendants as an individual, the devise has lapsed and passes by intestate distribution. If it is a devise to a class of which Frank Fulton Frailey was a member, his share has terminated but the shares of the other members of the class have proportionately increased. The determination is, of course, dependent upon the intent of the testator. Annot., Gift to a Class, 61 A.L.R.2d 212 (1958). It has been said "[t]he decisive inquiry is whether or not the testator, in making the particular gift in question, did so with 'groupmindedness,' . . . ." 80 Am.Jur.2d Wills § 1410, p. 484 (1975).

■ It is apparent the devise of all of the testator's personal property was to a group composed of the testator's brother and sisters and his wife's sisters named in the joint and mutual Will and their descendants or Audrey Pulling as substitutional devisees. The fact the testator named the members does not compel the conclusion it was not a class gift. *Jennings v. Newman*, 359 Mo. 276, 221 S.W.2d 487 (1949). Nor does the addition of the phrase to "share and share alike". *Jennings v. Newman*, supra, 221 S.W.2d at p. 489; *Stolle v. Stolle*, 66 S.W.2d 912 (Mo.1933). Nor does the fact the testator provided for substitutional devisees in the event of the death of a member of the class. Annot., Gift to a Class, 61 A.L.R.2d 212 § 10. *St. Louis Union Trust Co. v. Herf*, 361 Mo. 548, 235 S.W.2d 241 (1951). That the testator intended a devise to a class is supported by the presumption that he did not intend to die partially intestate. *Cavers v. St. Louis Union Trust Co.*, 531 S.W.2d 526 (Mo.App.1975). It is further demonstrated by the fact the testator in both the Will and Codicil carefully omitted

Bessie Rehm. Compare *Holloway v. Burke,* supra; *Cavers v. St. Louis Union Trust Co.,* supra; *McElroy v. Fluker,* 265 S.W.2d 361 (Mo.1954).

While prior decisions may be of limited precedential value in construing a given will, *Mercantile Trust Company National Ass'n v. Jaeger,* 457 S.W.2d 727 (Mo. banc 1970), the reasoning in cases such as *Cavers* and *Holloway* is compelling authority in this case. In *Cavers* the will provided that upon the death of 43 annuitants, a trust would terminate and the corpus was to be " 'distributed equally, share and share alike, among and paid to the said [eight named remaindermen]) and their respective descendants . . . per stirpes and not per capita . . .' ". *Cavers,* supra, at p. 533. Considering the presumption against partial intestacy and the other provisions of the will and in particular a provision that she made no other provisions for her son, the devise to the eight named remaindermen was found to be a devise to a class to be distributed to the descendants of five of the remaindermen who had descendants and that no part thereof passed by intestate distribution. In *Holloway,* supra, 79 S.W.2d at p. 104, the testator devised $1.00 to each of two half brothers and a half sister and devised the residue of his estate to "my full brothers and sisters, to-wit: (naming five) and their heirs . . .". Considering the devises of $1.00, it was found the testator intended the residue should go to his full brothers and sisters as a class. See *Holloway,* supra. The judgment is affirmed.

All concur.